685 A.2d 884

**Jesse WILLIAMS, Jr.**

v.

**PRINCE GEORGE'S COUNTY, Maryland, et al.**

**No. 337, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Dec. 4, 1996.

528

**530**

Heather Kelly (John F.X. Costello and McCarthy, Bacon & Costello, L.L.P., on the brief), Lanman, for Appellant.

John A. Bielec, Associate County Attorney (Barbara L. Holtz, Acting County Attorney and Sean D. Wallace, Deputy County Attorney, on the brief), Upper Marlboro, for Appellees.

Argued before MURPHY, C.J., and WENNER and DAVIS, JJ.

DAVIS, Judge.

This appeal requires us to determine whether summary judgment is the proper vehicle to decide the availability of qualified immunity to appellee police officers against various tort claims filed by appellant. Appellant alleged, in his initial and his amended complaint filed January 17, 1992, intentional infliction of emotional distress, negligent infliction of emotional distress, false arrest, false imprisonment, battery, assault, and negligence against Prince George's County, Maryland, Officer Walls, Officer Tyrone Taylor, Officer Darrius T. Qualls, Officer Mallory, Officer Mahon, and John Doe, unknown police officer, "c/o of Prince George's County Police Department."

After appellant's counsel voluntarily dismissed the case against Officer Mahon, trial was eventually scheduled for October 31, 1995. On October 24, 1995, the lower court granted the motion to dismiss, generally, and thereafter ordered that the complaint "be, and is hereby dismissed, with prejudice, insofar as it pertains to" Prince George's County, Maryland, Officer Tyrone Taylor, Officer Darrius T. Qualls, Officer Walls, Officer Mallory, and John Doe. The court's order concluded by stating, "that there being no just reason for delay, the clerk is hereby directed to enter this as a final judgment as to defendants Prince George's County, Maryland, Officer Tyrone Taylor, Officer Darrius T. Qualls, Officer Walls, Officer Mallory and John Doe." Although the October 24 order by the Circuit Court for Prince George's County was a dismissal of the complaint filed in the case, it is apparent

from the proceedings that the court based its disposition on the affidavit of Officer Walls, the deposition testimony of Officer Taylor, Officer Qualls, Mary Grace Williams, and Jesse Williams, and the answer to interrogatories and response to request for admissions filed by Prince George's County. It is from the court's order of October 24 that this appeal was filed.

Alternatively, viewing the court's dismissal of the complaint as a grant of appellees' motion to dismiss and of appellees' motion for summary judgment, appellant asks us to decide the following issues which we restate in reverse order:

I. Whether the trial court's order dismissing the complaint is actually a summary judgment, and was improperly granted, as there are genuine issues of material fact that should have been considered by a jury.

II. Whether the trial court erred in granting defendants' motion to dismiss in that the complaint sets forth claims for which relief can be granted, and for which defendants do not enjoy governmental immunity.

III. Whether the trial court erred in granting defendants' motion for summary judgment, or alternatively, motion to dismiss without holding a hearing on the same as required by MD. RULE 2–311(f).

### FACTS

On November 21, 1990, Mary Grace Williams, appellant's mother, reported to Officer Tyrone Taylor, who was then working as a part-time security guard for Shoppers' Food Warehouse located in the Coral Hill section of Prince George's County, that her 1990 Hyundai Sonata automobile had been stolen from the parking lot in front of Shoppers' Food Warehouse. After perambulation of the parking lot by the pair proved unfruitful, Officer Taylor transmitted a description of the vehicle and the license plate over the police radio to units in the area. He then completed an incident report regarding the suspected theft and thereafter placed the report on teletype, giving the written incident report to an officer on duty who submitted it to a sergeant at the Seat Pleasant Station.

According to the deposition testimony of Mary Williams, within two or three days of the theft, she was telephoned at her home by a Prince George's County police officer and notified that her automobile had been discovered on a dead end street "right at the back of Shoppers'" near Marlboro Pike in Prince George's County. Ms. Williams's husband drove her to recover her automobile and he had to drive her vehicle home because the ignition had been damaged to the point where a key could not be inserted and it could only be operated with a screwdriver.

Ms. Williams further testified at her deposition that approximately seven weeks later, she received a telephone call at her home from the police who inquired as to whether she knew "Jesse." She advised the officer who had telephoned her that Jesse was her son, that "he's got my car," and that appellant was on his way to work. When advised by the officer on the telephone that the record showed that her car was stolen, Ms. Williams testified that she told him "it can't; ... because when the police got my car, they reported it in, I said, and it's ok." Upon being asked if she was sure, the officer advised her that they had her son in custody and they were attempting to ascertain whether he had stolen the car, whereupon she advised them that he had permission to drive it.

Sometime thereafter, her son called her from work and, according to Ms. Williams, he was crying and related how police had stopped him, ordered him to put his hands behind his head, and required him to lie down on the ground. When appellant returned home that evening, his mother did not observe any scratches or bruises on his body, but he was "very nervous" and "you could tell that something was wrong with him."

Appellant, testifying at his deposition, stated that he was en route to work at Malcolm Grove Hospital located on Andrews Air Force Base in Capital Heights, Maryland, when a police officer followed him as he made a left into the McDonald's fast food restaurant off of Silver Hill Road in Prince George's County. As he was preparing to alight from his mother's

vehicle, the police officer approached with his service revolver pointed at appellant. Appellant, in his deposition testimony, stated:

Okay, once I turned into the parking lane inside of McDonald's, I turned my car off; and once I was getting ready to get out of my car, the police officer was behind me, with his gun pointed at me, an [sic] he was younger—at the time, he looked like he was a young cop—he was shaking, and the gun was just shaking at me, like that. He ordered me to get back in my car, put my hands over my head. At that time, it was during the winter, and I had a big coat on; so, he told me to just sit there; and I could see him on the radio, calling for backup. Well, at that time, I was praying to God that this officer don't [sic] shoot me, because the whole time he had the gun on me, and my hands was [sic] slipping, and it felt like 10 minutes before the backup got there; so I was just in the car, crying, praying to God that this officer don't [sic] shoot me. So, once the backup got there, he ordered me to get out [sic] the car very slowly, get on my hands and knees; told me to put my hands behind my back, which I done [sic] everything correctly; and I don't know who walked up behind me—put my hands behind my back, and somebody put their knee in my back, and hold [sic] my shoulder; they eased me down, they didn't rough me up, or anything. They just eased me down, handcuffed me, and the officer that had the gun on me, he asked me, do you know why we're arresting you.[?] I said, no. They said, you're riding in a stolen car. I said, stolen car—this is my mother's car.

* * * * * *

So he got on the radio, got in contact with my mother, made sure I had permission to drive the car, which I did. He said, it's something wrong here. I said, yeah, something is wrong here; so I told him, yeah, the car was stolen, but Officer Taylor found the car, which I felt like it should have been in the computer, that the car was found; and after all that was done and said, the only thing he had to say to me,

that I'm sorry. He gave me his card; he said call me if you have any trouble, take my card and you give me a call.

Later, appellant reiterated that he was wearing a big Alaskan coat; how he was ordered to lie down on the ground at which time some unidentified officer put his knee behind his back; and how he kept having flashbacks after the incident. He acknowledged, however, that he had no physical injuries as a result of the incident nor did he or his family incur any medical expenses.

Officer Qualls testified at his deposition that, at some point on the evening in question, appellant, driving his mother's Hyundai automobile, swerved in front of him on Brooks Drive. Because the Hyundai, according to the witness, was a popular target of car thieves, he decided to place a radio call to his dispatcher to ascertain whether the car was stolen. Once the dispatcher confirmed that the records indicated the subject vehicle was stolen, he followed appellant into the McDonald's parking lot, approached appellant, ordering him "to put his hands up in the air and put his car in gear." Officer Qualls stated that appellant complied with his orders to raise his hands and place his car in gear, whereupon he advised the dispatcher that he was going to wait for backup.

Appellant was then ordered to lie down in a prone position with palms facing upward and to face the direction away from the police officers. As Officer Qualls secured his weapon in order to place handcuffs on appellant, he asserted that "my major concern was that [the] vehicle was confirmed stolen. I was acting on that and my other thing was to make sure he was handcuffed immediately." The officer acknowledged that, in accordance with police policy and training, as he handcuffed appellant, his knee was against Williams's shoulder blade while the officer was in a kneeling position. After Williams was searched, he asked Officer Qualls "what is all of this for" to which the officer responded that the vehicle had been confirmed stolen and that appellant was under arrest. At that point, after appellant advised the arresting officers that his mother had authorized him to drive the car, Officer Qualls

asked the dispatcher to determine the ownership of the car, the dispatcher subsequently notifying Officer Qualls that the owner and appellant had the same last name. The dispatcher, shortly thereafter, advised Officer Qualls that appellant was authorized to drive the car and the owner had informed her that she recovered the vehicle "but forgot to take it out of the computer."

Officer Qualls's deposition testimony indicated that once he received information that appellant had permission to use the car, he immediately took the handcuffs off of him. At that point, according to Officer Qualls, appellant said his mother reported the car stolen at Shoppers' Food Warehouse, but that she had recovered it in Washington, D.C., and that Officer Qualls advised that he had recalled the stolen automobile report as well as the field observation report. According to the officer, he and Williams discussed what had happened and the officer explained why they had handled the situation the way they did and, according to Officer Qualls, "he was fine with that." He denied ever physically touching appellant with his weapon.

It should be noted that, consistent with the deposition testimony of Officer Qualls, Officer Tyrone Taylor, appellant and appellant's mother, appellees' response to appellant's Request for Admissions of Fact are in accord in every significant respect with the testimony of the four witnesses.

## LEGAL ANALYSIS

### I

█ Our initial task, upon a review of the record below, is to determine how the trial judge disposed of the instant case and then apply the appropriate standard to the court's action. Appellant contends that "the plain language of the order indicates that the court granted Appellees' Alternative Motion to Dismiss, and not their Motion for Summary Judgment." He posits that, assuming the order was in fact a dismissal of the claims, it was improper because "all of the claims set out in the complaint are well-established, legally cognizable causes

of action." He acknowledges, however, that it is highly likely that the court "did make factual conclusions," urging that this would require reversal and remand of the case.

Citing MD. RULE 2–322(c), appellees, on the other hand, assert that their Motion for Summary Judgment, or alternatively, Motion to Dismiss, must be treated as a motion for summary judgment in view of the court's consideration of matters presented outside of the pleadings. MARYLAND RULE 2–322(c) provides, in part, "[i]f, on a motion to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment. . . .". In the case at bar, the trial court did not exclude the facts submitted to it through the affidavits and depositions of the parties, and thus, the court's order must be treated as a grant of appellees' motion for summary judgment. *See Hrehorovich v. Harbor Hospital Ctr., Inc.,* 93 Md.App. 772, 782, 614 A.2d 1021 (1992) (Despite the absence of an express indication of how the trial judge treated the case, we held that the lower court transmuted appellees' motion to dismiss to a motion for summary judgment. We considered the fact that the trial judge did not exclude facts that were submitted to the court that were not part of the pleadings.); *Haselrig v. Public Storage, Inc.,* 86 Md.App. 116, 585 A.2d 294 (1991) (Despite the language of the court's order, the ruling was on the motion for summary judgment, not the motion to dismiss.) Thus, we conclude in the instant case, although the court did not specifically state the legal grounds for granting appellees' Motion, it had before it facts that were not part of the pleadings, and thus, the court's ruling was on the motion for summary judgment, not the motion to dismiss.

In addition, we said, in *Bond v. NIBCO,* 96 Md.App. 127, 133, 623 A.2d 731 (1993):

It would certainly be preferable to have before us the basis for the circuit court's order. This would not only give us the benefit of the circuit court's reasoning as to why summary judgment was proper but also make it clear

whether the lower court found any of the asserted grounds lacked merit, *i.e.*, did not support the grant of summary judgment. In the absence of any such discussion, we must assume that the circuit court carefully considered all of the asserted grounds and determined that all or at least enough of them as to merit the grant of summary judgment were meritorious.

The trial judge in the case *sub judice* obviously gave no hint as to those arguments presented by the litigants that led to the grant of the motion to dismiss the claim. As *NIBCO* points out, however, we must assume that the trial court considered all of the asserted grounds and determined that, in whole or in part, they warranted what in essence was the granting of appellees' motion for summary judgment. *Id.* In a thorough exposition of what is contemplated once a party files a motion for summary judgment, we held in *NIBCO* that a movant was required to "support his various contentions by placing before the court facts that would be admissible in evidence or otherwise detailing the absence of evidence in the record to support a cause of action." *Id.* at 134, 623 A.2d 731. Citing *Washington Homes, Inc. v. Interstate Land Dev. Co., Inc.*, 281 Md. 712, 716, 382 A.2d 555 (1978), we further stated that "when a moving party has set forth sufficient grounds for summary judgment, the party opposing the motion must show with 'some precision' that there is a genuine dispute as to a material fact and place before the trial court facts that would be admissible in evidence." *Id.* at 135, 623 A.2d 731 (citations omitted).

Finally, we concluded that

"[t]o satisfy the requirement that there be no genuine dispute as to any material fact, the moving party *must include in the motion the facts necessary to obtain judgment and a showing that there is no dispute as to any of those facts.*" Neimeyer at 330 [MARYLAND RULES COMMENTARY 171 2ed.1992] (emphasis added). *Only* if a movant "bears this initial responsibility" or makes this "showing" does the party opposing the summary judgment motion have the burden of identifying "with particularity the mate-

rial facts that are disputed." Thus, a motion for summary judgment that simply asserts that the opponent has not identified disputed facts is not sufficient. A summary judgment movant usually is not required to file an affidavit, *see* MD. RULE 2–501(a), but *if* the movant disputes facts alleged in the complaint (or answer if the movant is the plaintiff), the movant must himself identify the portions of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553.

*Id.* at 136, 623 A.2d 731.

We reject appellant's assertion that the judgment must be reversed if it appears that the trial court did make factual conclusions; however, sorting out what occurred below is made more difficult by the different theories of liability involved. The two broad theories of liability are bottomed on the negligent failure to remove the vehicle from the stolen car list and the alleged illegal arrest, detention, and force used. Without the benefit of the court's reasoning, we are unable to discern whether the court intended to dismiss certain counts and grant summary judgment on others or whether summary judgment was granted as to all counts, notwithstanding that the order, by its explicit terms, dismissed all claims. In any event, because the court had before it facts that went beyond the pleadings, we shall treat its grant of the motion to dismiss as though it were a grant of appellees' motion for summary judgment. Considering the facts before the lower court, we initially must determine whether there was in dispute any fact that would somehow affect the outcome of the case. *Warner v. German,* 100 Md.App. 512, 642 A.2d 239 (1994).

## ILLEGAL DETENTION AND EXCESSIVE FORCE

Appellant's constitutional allegations are that Officers Qualls and Taylor illegally detained him and used excessive force against him.[1] Appellees argued in their memorandum in

---

1. Although the Amended Complaint alleges that appellant's civil rights were violated as a result of the acts of Officers Walls, Taylor, Qualls,

support of Motion for Summary Judgment or Alternatively, Motion to Dismiss that the officers and the County did not violate appellant's constitutional rights, and alternatively, that the officers cannot be liable because they are entitled to qualified immunity. Appellant argues that these constitutional issues cannot be decided on a motion for summary judgment because there are material issues of fact in dispute. Appellant then shifts his argument from the materiality of the facts before the lower court to the principal thrust that the issue of reasonableness of the officers' actions is "patently one for the jury." We disagree. Appellant's assertions are unsupported by the pleadings, affidavits, and depositions that were before the court and are insufficient to defeat appellees' motion for summary judgment with regard to appellant's constitutional claims.

## GENUINE ISSUES OF MATERIAL FACT

Although appellant's claim of error is couched primarily in terms of "issues of material fact," he intimates the statement that the only force used by Officer Qualls, in appellees' motion, is untrue. As indicated, appellees' response to the request for admissions of fact admitted under requests No. 5 and No. 9 that additional measures were taken to secure appellant and a cursory review of the deposition testimony of Officer Qualls as

---

Mahon, Mallory, and/or John Doe, unknown police officer of Prince George's County, as agents and under color of authority of Prince George's County, appellant has voluntarily dismissed the case against Officer Mahon. In addition, Appellant's Opposition to Defendant's Motion for Summary Judgment, or Alternatively, Motion to Dismiss, states that appellant "would submit to the arguments of the defendants with respect to Officer Walls and Mallory. Plaintiff has no information to contradict the affidavits on this issue." Appellant, however, also states that because he cannot recall the specific name of the officer who contacted the Williams's family and returned their vehicle to them, they have sued in a John Doe capacity. In addition, plaintiff/appellant states that Officer Taylor was the police officer that reported the car stolen and Ms. Williams believes Officer Taylor is the officer who located the vehicle and returned it to her and her husband. Thus, we will only consider the allegations asserted by appellant against Officers Taylor, Qualls, John Doe, unknown officer of Prince George's County, and Prince George's County.

compared to appellant and his mother shows virtually no inconsistencies. The same may be said regarding appellant's compliance with the orders of the arresting officers, as response Nos. 6, 7, and 10 admit compliance by appellant with the police officers' orders as well as full cooperation throughout the incident. Thus, despite appellant's assertion that his compliance with the officers' orders was missing from the recitation of facts, the court clearly had before it an acknowledgement by appellees that he was compliant and cooperative during the entire incident. We conclude, based on the pleadings, affidavits, and depositions, that there are no issues of material fact in dispute.

## SUMMARY JUDGMENT AS A MATTER OF LAW

Appellees argue that they are entitled to summary judgment as a matter of law because they are shielded by qualified immunity. In *Harlow v. Fitzgerald*, 457 U.S. 800, 815–19, 102 S.Ct. 2727, 2736–39, 73 L.Ed.2d 396 (1982) and *Anderson v. Creighton*, 483 U.S. 635, 638–41, 107 S.Ct. 3034, 3038–40, 97 L.Ed.2d 523 (1987), the Supreme Court enunciated an "objective legal reasonableness" test in determining whether a public official is entitled to qualified immunity. That determination must be in light of "clearly established" legal rules at the time of the alleged conduct. *Anderson*, 483 U.S. at 639, 107 S.Ct. at 3038–39. Clearly established law is defined as more than a mere vague assertion of an abstract constitutional right. *Id.* The tests to be applied must be at a more particularized level. *Id.* at 640, 107 S.Ct. at 3039. If the officer's specific conduct was clearly proscribed by existing law, he or she should be prohibited from asserting immunity. *Id.* at 640–41, 107 S.Ct. at 3039–40. The very conduct at issue, however, need not have previously been ruled unlawful, but rather, in light of existing legal precedent, the unlawfulness must have been apparent. *Id.* at 640, 107 S.Ct. at 3039. The Court said in *Anderson*, at 641, 107 S.Ct. at 3039–40:

The relevant question ... is the objective (albeit fact-specific) question whether a reasonable officer could have believed [the officer's] warrantless search to be lawful, in

light of clearly established law and the information the searching officers possessed.

Moreover, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). When police officers perform discretionary functions, the rationale in insulating officers against all but flagrant abuses of their position, is the necessity to permit police officers, especially in the context of police work, to make the appropriate decisions in an atmosphere of great uncertainty. The theory is that holding police officers liable in hindsight for every injurious consequence of their actions would paralyze the functions of law enforcement. *Pinder v. Johnson*, 54 F.3d 1169, 1173 (4th Cir.1995). Moreover, permitting unwarranted lawsuits against officers would entail substantial social costs including inhibition and fear of potential liability among peace officers and would further consume much of the officer's time preventing him or her from performing his or her duties. *See Anderson*, 483 U.S. at 638, 107 S.Ct. at 3038 and *Turner v. Dammon*, 848 F.2d 440, 443–44 (4th Cir.1988). Because of these considerations, immunity is granted to officers who act reasonably, albeit mistakenly, in light of clearly established law and the information they possessed without the benefit of hindsight. *Anderson*, 483 U.S. at 641, 107 S.Ct. at 3039–40.

Appellant and appellee cite *Taft v. Vines*, 83 F.3d 681 (4th Cir.1996) in which the U.S. Court of Appeals for the Fourth Circuit, sitting *en banc*, affirmed the grant of summary judgment where the police officers had probable cause to believe that the occupant of the subject vehicle was a suspect wanted for murder and approached the vehicle with drawn weapons. Appellant attempts to distinguish *Taft* on the basis of the distinction of the severity between one suspected of being a car thief as opposed to one suspected of murder. The only issue is whether the arresting officers have probable cause to make a lawful arrest. In *Taft*, the Court

adopted the earlier opinion of Judge Motz, who had dissented from the panel decision, and held:

> The issue presented by the excessive force claim is not whether the officers violated police procedures, or even whether they, in fact, violated the Fourth Amendment. Rather, the question is whether, confronted with the facts of this case, reasonable police officers should have known that clearly established constitutional law prohibited the methods used in the search. We cannot so hold. Accordingly, *the officers were entitled to summary judgment on the basis of qualified immunity on the excessive force claims.*

*Id.* at 684 (emphasis added).

The dissenting opinion by Judge Motz had opined:

> Being the subject of an armed felony stop at night by numerous law enforcement officers most certainly would be a terrifying experience for guilty and innocent alike, regardless of their sex or age. However, in exigent circumstances, the law permits its enforcement officers to conduct such procedures in order to protect the community from a dangerous and violent offender. As frightening as these events must have been for the plaintiffs, these acts present a text book case for the imposition of qualified immunity. Not every mistake and act by "state actors" is premised on constitutional motives.

*See Taft v. Vines,* 70 F.3d 304, 317–321 (1995).

Thus, as to appellant's constitutional allegations of illegal detention and excessive force, the officers were entitled to the cloak of qualified immunity. The salient facts before the lower court were contained in the deposition testimony of Williams himself, who acknowledged not only that the handcuffs were immediately removed once it was confirmed that he was authorized to drive the vehicle, but that Officer Qualls apologized, gave him his (Officer Qualls) business card, sat with him in the departmental vehicle explaining why the procedures were employed in his arrest, and offered to facilitate the removal of the vehicle from the hot list so that

appellant would not be subjected to another unwarranted detention.

Specifically, although appellant's deposition testimony related that the officers pointed their weapons at him, he acknowledged that they "didn't rough me up, or anything" as they "eased [him] down" onto the ground, and that someone's knee had been placed in the back of his shoulder blade. Accepting appellant's assertion that the most serious violations were that this incident occurred over a period of fifteen minutes and that part or all of that time the officers had their guns trained on him, given the information, although erroneous, that the car was stolen, the high crime and drug area, appellant's bulky coat which ostensibly was conducive to concealing a weapon, and the actions of the police officers in detaining appellant, the arresting officers were entitled to the protection of qualified immunity because their actions were in conformity with "clearly established" legal rules. Appellant ultimately posits, "Even assuming . . . that it was reasonable to assume that the car was stolen, the question of the reasonableness of *holding* a citizen, suspected of riding in a stolen car, who was compliant in every way with the officers, should be reserved for the jury." The inescapable implication of appellant's statement is that a jury could have properly decided that it would have been a reasonable course of action for the arresting officers, *before* confirmation that the car was not stolen, to *release* a suspected car thief. Such a suggestion is spurious at best.

■ In addition, appellant's amended complaint, Count I, paragraph 8, states that the individual officers "acted under the color of authority and as agents of Prince George's County," and as a result of the acts of the individual officers, appellant suffered physical and emotional injury. "Governmental entities are not liable under § 1983 by mere *responde-at superior.*" *Kopf v. Skyrm,* 993 F.2d 374, 381 (4th Cir.1993). "A plaintiff must prove both a constitutional violation and a custom or policy of the governmental body that caused the violation." *Id.* (Citing *Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978));

*Ritchie v. Donnelly,* 324 Md. 344, 356, 597 A.2d 432 (1991). In *Kopf v. Wing,* 942 F.2d 265 (4th Cir.1991), the court described the County's liability as "derivative of, but narrower than, the individual officers.'" *Id.* at 269. Appellant has not alleged in his complaint, or in his Opposition to Defendant's Motion For Summary Judgment, or Alternatively, Motion to Dismiss that a custom, policy, or practice of the governmental body caused a constitutional violation.

Furthermore, we do not address whether the County violated appellant's constitutional rights in its individual capacity by not taking the car off the stolen car list because appellant did not allege such a violation in his complaint. Nor does he set forth any facts to support such a claim. In appellant's Opposition to Motion for Summary Judgment, or Alternatively, Motion to Dismiss, appellant, however, alludes to such a claim. Appellant states that the failure of the County to remove the car from a stolen car list led the police officers to conclude that appellant was a criminal. This argument raises the issue of whether a municipality may be held liable on a failure to train or supervise theory even when the individual municipal employee did not commit a constitutional violation. *See Fagan v. City of Vineland,* 22 F.3d 1283, 1292 (3rd Cir.1994); *see also Hopkins v. Andaya,* 958 F.2d 881, 888 (9th Cir.1992). Appellant, however, has not brought separate, independent constitutional claims against the pursuing officers and the County, and therefore, we do not address this issue.

## MARYLAND CONSTITUTIONAL CLAIMS

In Maryland, qualified immunity does not apply to constitutional claims. *Clea v. Mayor and City of Baltimore,* 312 Md. 662, 679, 541 A.2d 1303 (1988) (a public official who violates a plaintiff's rights under the Maryland Constitution is entitled to no immunity). Thus, a plaintiff may recover compensatory damages in the absence of malice. *Id.* at 680, 541 A.2d 1303. Punitive damages, however, are not recoverable absent a showing of actual malice. *Id.* Here, appellant has not demonstrated that either the officers or the County acted with malice, and thus, appellant is not entitled to punitive damages.

Furthermore, we conclude that appellant is not entitled to recover compensatory damages under Article 19 of the Maryland Declaration of Rights because neither the officers nor the County violated appellant's rights under Articles 24 or 26.

▮ Appellant, in his opposition to defendants' Motion for Summary Judgment, or Alternatively, Motion to Dismiss, addresses constitutional violations under Paragraph 2, but makes no mention of Maryland constitutional claims. The essential analysis, however, is the same under Articles 24 and 26 of the Maryland Constitution as that under the Fourth Amendment to the United States Constitution. In other words, Article 26 of the Maryland Constitution is in *pari materia* with the Fourth Amendment of the federal constitution.

Consequently, the standard set forth by the Supreme Court in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), is controlling. The Court, in *Graham*, held that all claims that law enforcement officers have used excessive force should be analyzed under a reasonableness standard. Under the reasonableness standard, the Court stated that one must pay

> careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.... The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Id.* at 396–97, 109 S.Ct. at 1872.

In the present case, appellant fails to provide any support for the assertion that the officers did not act as a reasonable officer would have under these circumstances, but argues that

what is reasonable is an issue for the jury to decide. Appellees' actions, viewed from the perspective of a reasonable officer on the scene, cannot be viewed as unreasonable. Viewing the facts in the light most favorable to appellant, the depositions, affidavits, and pleadings all indicate that the only force used by Officer Qualls was during the arrest when appellant was handcuffed after Officer Qualls had learned that the car appellant was driving was a stolen vehicle. Appellant does not contradict these facts, but states in his deposition that he was told to get on his hands and knees and "they eased me down, they didn't rough me up, or anything." Appellant's deposition also indicates that after Officer Qualls verified that appellant had not stolen the car, he immediately released appellant and apologized. It would have been unreasonable for Officer Qualls, knowing the car was stolen and given the high crime and violence within the area, not to take the precautions that he took in order to protect himself and the general public.

Likewise, decisions concerning the Equal Protection Clause of the Fourteenth Amendment are practically direct authorities with regard to Article 24 of the Declaration of Rights. *Murphy v. Edmonds*, 325 Md. 342, 354, 601 A.2d 102 (1992). The standard pursuant to the Due Process Clause of the Fourteenth Amendment is whether the conduct complained of "shocks the judicial conscience." *Temkin v. Frederick County Comm'rs*, 945 F.2d 716, 719 (4th Cir.1991). As explained above, appellee's action, viewed from the perspective of a reasonable officer on the scene, cannot be viewed as "shocking the judicial conscience."

Furthermore, as stated previously, the County cannot be liable on a theory of respondeat superior if the actions of the officer/employees did not violate the constitution, and appellant has not alleged any independent, separate grounds against the County. With regard to appellant's constitutional claims, we conclude that there are no disputed material facts, and the undisputed facts are not susceptible to inferences supporting the position of appellant. *See Clea*, 312 Md. at 677,

541 A.2d 1303 (the inferences that the non-moving party seeks to draw must be reasonable). Appellees set forth facts sufficient to support their motion for summary judgment, and thus, appellees are entitled to summary judgment as a matter of law.

## STATE TORT CLAIMS

Appellant's Amended Complaint contains several counts of non-constitutional torts: negligence and gross negligence, assault, battery, false imprisonment, false arrest, negligent infliction of emotional distress, and intentional infliction of emotional distress. Appellees argue in their Motion for Summary Judgment, or Alternatively, Motion to Dismiss that they are entitled to summary judgment on the State tort claims because either the officers and County are statutorily immune or because the record does not contain facts which, if true, establish the torts alleged.[2] We address each of the individual torts alleged separately.

## INDIVIDUAL STATE TORTS

### Negligence and Gross Negligence

■ Qualified public official immunity is a defense to negligence actions. *Ashton v. Brown,* 339 Md. 70, 118, 660 A.2d 447 (1995); *Parker v. State,* 337 Md. 271, 285, 653 A.2d 436 (1995) (officers were entitled to public official immunity for negligence and gross negligence counts); *Davis v. DiPino,* 99

---

**2.** Appellees suggest that public official immunity is applicable to each of the intentional tort claims as well as the negligence counts pursuant to MD.CODE ANN., CTS. & JUD. PROC § 5–321(b)(1). Because we decide that the pleading, depositions and affidavits do not allege facts which, if true, would establish appellant's counts of assault and battery, false imprisonment, false arrest, negligent infliction of emotional distress and intentional infliction of emotional distress, we do not decide whether appellees are entitled to public official immunity for intentional torts pursuant to § 5–321. In *Ashton v. Brown,* 339 Md. 70, 660 A.2d 447 (1995), the Court interpreted common law immunity and reserved determining statutory immunity. The Court pointed out that it is unclear whether § 5–321(b)(1) extends common law qualified immunity to intentional tort suits. *Id.* at 116 n. 23, 660 A.2d 447.

Md.App. 282, 637 A.2d 475 (1994), *rev'd on other grounds*, 337 Md. 642, 655 A.2d 401 (1995). Section 5–321(b)(1) of MD.CODE ANN., CTS. & JUD. PROC. provides that

an official of a municipal corporation while acting in a discretionary capacity, without malice, and within the scope of the official's employment or authority shall be immune as an official or individual from any civil liability for the performance of the action.

Unquestionably, the actions of police officers within the scope of their law enforcement function are quintessential discretionary acts. *Robinson v. Bd. of County Comm'rs*, 262 Md. 342, 346–47, 278 A.2d 71 (1971); *Boyer v. State*, 80 Md.App. 101, 560 A.2d 48 (1989), *vacated in part*, 323 Md. 558, 594 A.2d 121 (1991). In the absence of any showing of malice, public officials acting within the scope of their official duties while performing discretionary functions are thus free from liability. *Bradshaw v. Prince George's County*, 284 Md. 294, 302–04, 396 A.2d 255 (1979), *overruled in part by James v. Prince George's County*, 288 Md. 315, 418 A.2d 1173 (1980); *Robinson*, 262 Md. at 347, 278 A.2d 71.

Malice has been defined as the performance of an act without legal justification or excuse and with an evil or rancorous motive influenced by hate, the purpose of which is to deliberately and wilfully injure another. *H & R Block v. Testerman*, 275 Md. 36, 338 A.2d 48 (1975), *overruled in part by Owens–Illinois, Inc. v. Zenobia*, 325 Md. 420, 601 A.2d 633 (1992). Although appellees argue that the amended complaint lacks any allegation of malice with the exception of the battery and intentional infliction of emotional distress count, we have made the preliminary determination that our review should be on the basis that the lower court granted the motion for summary judgment, notwithstanding the order of dismissal. Thus, we may look to the facts and circumstances set forth in the deposition testimony as well as other matters outside of the pleadings. Therein is to be found no expressions of hostility of the officers nor any physical harm inflicted, and indeed, the record reflects conciliation, accommodation, and

even an apologetic attitude on the part of the arresting officer. Based on the facts and circumstances before the lower court, there was not a scintilla of evidence that the arresting offices harbored ill will or an evil motive toward appellant.

As stated above, in the absence of malice, neither police officers nor their supervisors may be liable for discretionary actions taken in the performance of their duties. The facts, as gleaned from the record, however, fail to disclose any negligence whatsoever. Negligence is the failure to use reasonable care under the circumstances. *Bauman v. Woodfield,* 244 Md. 207, 223 A.2d 364 (1966). In the instant case, there is no evidence in the record that indicates that either appellee Qualls or appellee Taylor recovered the stolen vehicle. Rather, the record reveals that neither appellee Qualls nor appellee Taylor had any responsibility to monitor and update the stolen car report, nor is there anything contained in the record to support a finding that Officer Qualls or Officer Taylor acted with malice. Thus, we conclude that the officers are not liable under a theory of negligence.

We now turn to appellant's negligence claim against the County. Appellant's Amended Complaint, Negligence Count II states, in part:

11. That Officer T. Taylor and/or Officer D. Qualls recovered Ms. Williams'[s] vehicle in November of 1990.

12. That this information was relayed to civilian employees of the Prince George's County Police Department.

13. That these civilian employees grossly and negligently failed to remove the stolen car report from the computer since November 20, 1990.

14. That Officer Taylor and/or Officer Qualls grossly and negligently failed to remove the vehicle from the stolen car list.

Pursuant to the Local Government Tort Claims Act (LGTCA) MD.CODE ANN., CTS. & JUD. PROC. § 5–401 *et seq.,* the County is given the benefit of its employees' defenses and immunities. Section 5–403(e) provides:

A local government may assert on its own behalf any common or statutory defense or immunity in existence as of June 30, 1987, and possessed by its employee for whose tortious act or omission the claim against the local government is premised and a local government may only be held liable to the extent that a judgment could have been rendered against such an employee.

*Id.* Thus, the County cannot be vicariously liable for the officer's conduct because it can raise the officer's defense of immunity, pursuant to MD.CODE ANN., CTS. & JUD. PROC. § 5–321(b)(1).

Furthermore, there is no claim against Prince George's County in its individual capacity for failing to implement an appropriate procedure or supervising its employees on removing cars from the stolen list. Thus, appellant's complaint apparently alleges negligence against Prince George's County on the theory of respondeat superior based on the conduct of the civilian employees. The civilian employees, however, are not entitled to public official immunity pursuant to MD.CODE ANN., CTS. & JUD. PROC. § 5–321, and thus, the County cannot raise this defense pursuant to MD.CODE ANN., CT. & JUD. PROC, § 5–403(e).

■ Section 5–403(b)(1) of LGTCA provides that "a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government." MD.CODE ANN., CT. & JUD. PROC. § 5–403(b)(1) (1995). In the case *sub judice,* there has been no judgment against any "civilian employee"; thus, Prince George's County has no liability under § 5–403(b)(1). Section 5–403(b)(2) states that a local government may not assert governmental immunity "to avoid the duty to defend or indemnify an employee," but here the individual civilian employees have not been sued. Thus, § 5–403 does not provide a method for directly suing the County or other local governments. *See Khawaja v. Mayor and City of Rockville,* 89 Md.App. 314, 325–26, 598 A.2d 489 (1991). Rather, the purpose of § 5–403

is to limit the liability of local governments and require them to provide a defense to their employees under certain circumstances. Ch. 594 of the Laws of Md.1987, § 1.

▆▆▆▆▆▆▆ Moreover, even if appellant sued Prince George's County in its individual capacity, it would have been shielded from State tort claims by governmental immunity. Counties are shielded from tort liability for governmental actions unless the General Assembly has specifically waived the immunity of the municipality.[3] *Md.–National Capital Park and Planning Comm. v. Kranz*, 308 Md. 618, 521 A.2d 729 (1987). In *Khawaja*, we considered a claim that LGTCA (MD.CODE ANN., CTS. & JUD. PROC. § 5–401 *et seq.*) operated as a waiver of governmental immunity. We held that only a clear and

---

3. Maryland Annotated Code article 25A, § 5(CC), which authorized chartered counties to waive sovereign immunity if it carried the appropriate insurance, was repealed by Chapter 594 of the Laws of Md.1987. Section 1 of Chapter 594 enacted the Local Government Tort Claims Act, and Section 2 of the Act repealed § 1013 of the Prince George's County Charter. *See* Prince George's County Charter § 1013 (1995). Previously, § 1013 of the County's Charter waived the County's liability in certain circumstances. Section 1013, however, was amended several times beginning in 1976, and again in 1982 and 1986. In addition, § 1013 was the subject of case law which has in effect reverted the provision back to the 1976 version. *See Surratt v. Prince George's County*, 320 Md. 439, 578 A.2d 745 (1990)(holding the 1986 amendments to § 1013 were ineffective to abolish the County's waiver of immunity); *Prince George's County v. Fitzhugh*, 308 Md. 384, 519 A.2d 1285 (1987)(holding that § 1013 constituted a full waiver of governmental immunity because a purported limitation of the scope of the immunity embodied in a 1982 charter amendment was not authorized by the Express Powers Act). *See also Bradshaw v. Prince George's County*, 284 Md. 294, 396 A.2d 255 (1979)(holding that § 1013 did not extend to public official immunity of individual officers, and if officers were immune, the County could not be held liable on the basis of respondeat superior); *James v. Prince George's County*, 288 Md. 315, 418 A.2d 1173 (modified *Bradshaw* and held that the County could be liable for the negligent conduct of its employees without regard to their status as public officials). *See also Cox v. Prince George's County*, 296 Md. 162, 460 A.2d 1038 (1983). The effective date, however, of Chapter 594 is July 1, 1987 and its provisions apply "to actions arising from events occurring on or after" its effective date. Ch. 594, §§ 5 and 3. Thus, any effect § 1013 previously may have had with regard to waiving the County's liability is not applicable to actions arising after 1987, such as the case at bar.

specific waiver is effective and that "the LGTCA, by its own terms, contains no specific waiver of governmental immunity when a governmental entity is sued in its own capacity." *Id.* at 325, 598 A.2d 489. Thus, there is no blanket waiver of governmental immunity regarding local jurisdiction.

The net result is that appellee Prince George's County cannot be held liable as to State claims. Under the LGTCA, the local government must defend and indemnify an employee for acts occurring within the scope of his or her employment. The LGTCA, however, does not authorize the maintenance of a suit directly against the local government. *Khawaja,* 89 Md.App. at 325–26, 598 A.2d 489.

## ASSAULT, BATTERY, FALSE IMPRISONMENT, AND FALSE ARREST

 False imprisonment, false arrest, and assault and battery (when the force used is not excessive) can only occur when there is no legal authority or justification for the arresting officer's actions. *See Ashton,* 339 Md. at 119, 660 A.2d 447. Appellant contends that Officer Qualls lacked probable cause "from the first step," which was to run the tag number through the computer. He asserts that, "at that point, there was not justification—no probable cause, to subject Mr. Williams to the criminal justice system." The flaw in appellant's reasoning, however, is that he was not subject to the criminal justice system at that point. It was only after appellant turned into the parking lot of the McDonald's fast food restaurant and Officer Qualls had received confirmation that the vehicle appellant was driving was on the stolen car list, that he was subjected to the criminal justice system. There is no constitutional or privacy right that protects a citizen who is unimpeded by a police officer from having a license tag checked for an outstanding warrant or to determine whether the vehicle was in fact stolen.

Having probable cause to stop and arrest appellant, Officer Qualls had the legal authority and justification to detain him, at least until it could be ascertained that he was not driving a

stolen vehicle. *Id.* at 119–20, 660 A.2d 447. Officer Qualls had never met appellant, believed he was driving a stolen car and, in the course of arresting a suspected car thief who may well have had a weapon concealed in a large Alaskan fur coat, acquitted himself appropriately under the circumstances. Thus, the record is void of facts which, if true, would establish assault, battery, false imprisonment, or false arrest.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

 The Court of Appeals said in *Kentucky Fried Chicken Nat'l Management Co. v. Weathersby,* 326 Md. 663, 670–71, 607 A.2d 8 (1992):

> The extraordinary feature of the tort . . . is its insistence upon extreme and outrageous conduct. In fact this element is, in large respect, the entire tort. It both limits the reach of the tort and dominates the proof of its elements. The outrageous requirement means there is no liability simply for the intentional infliction of emotional distress. If a defendant intends to cause a plaintiff emotional distress and succeeds in doing so, the defendant is nonetheless not liable unless his or her conduct is also extreme and outrageous.

The Court further noted at 670, citing *Batson v. Shiflett,* 325 Md. 684, 734–35, 602 A.2d 1191 (1992) that

> [w]e emphasized that the tort is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct. . . . Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.

The Court opined at 670 that a general rule

> is that there is liability for conduct exceeding all bounds usually tolerated by decent society of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind. The requirements of the rule are rigorous and difficult to satisfy.

Citing W. PAGE KEETON, PROSSER AND KEETON ON THE LAW OF TORTS, § 12, p. 60–61 (5th ed.1984).

Against that standard, as a matter of law, there was nothing that the arresting officers did that could be characterized as "so outrageous in character and so extreme in degree as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Contrary to the averment of appellees, there was personal interaction between the officers and appellant, but that interaction, in no sense, rose to the level required to make it a factual issue regarding the officer's conduct. Thus, appellees are also entitled to summary judgment on the intentional infliction of emotional distress count.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

 As appellees point out, we held in *Hamilton v. Ford Motor Credit Co.,* 66 Md.App. 46, 502 A.2d 1057 (1986), that Maryland does not recognize the separate and distinct tort of negligent infliction of emotional distress. Therefore, the lower court properly granted appellees' motion to dismiss appellant's claim for negligent infliction of emotional distress.

## II and III

Appellant devotes eleven pages of his thirty-five page brief to arguments in support of his claim that the trial court erred in dismissing his claims against appellees. As noted, the lower court unquestionably granted the motion to dismiss rather than the motion for summary judgment. Equally beyond question, however, is the fact that, given the nature of the allegations and the facts before the lower court, the case was best disposed of by way of a grant of summary judgment. Accordingly, we have reviewed appellant's claims of error in the context of the propriety of a grant of the motion for summary judgment, and we, therefore, need not address the numerous arguments appellant makes as to why the various allegations state a cause of action. Appellant has essentially

received the benefit of an assumption that causes of action have been set forth in the various counts of his complaint.

We note that our review on the basis of a grant of summary judgment permits us to consider whether the derivative actions contained in appellant's complaint are viable, there being no viable claim on the basis of respondeat superior if indeed the employees or servants of Prince George's County are shown not to have committed any of the torts alleged.

■■■ Appellant, citing *Karl v. Blue Cross and Blue Shield*, 100 Md.App. 743, 642 A.2d 903, *cert. denied* 336 Md. 558, 649 A.2d 601 (1994), argues that MD. RULE 2–311(f) required the trial court to conduct a hearing once one was requested when the court's decision would be dispositive of a claim or defense.

MARYLAND RULE 2–311(f) provides:

A party desiring a hearing on a motion . . . shall so request in the motion or response under the heading "Request for Hearing." Except when a rule expressly provides for a hearing, the court shall determine in each case whether a hearing will be held, *but it may not render a decision that is dispositive of a claim or defense without a hearing if one was requested as provided in this section.*

(Emphasis added).

Appellees cite our decision in *Briscoe v. Mayor and City Council of Baltimore*, 100 Md.App. 124, 640 A.2d 226 (1994), in which we acknowledged, citing *EMI Excavation, Inc. v. Citizens Bank*, 91 Md.App. 340, 341, 604 A.2d 518, *cert. denied* 327 Md. 523, 610 A.2d 796 (1992), that "[we] have consistently held that where a hearing has been properly requested under Rule 2–311(f), the court must hold a hearing if a decision on the motion would be dispositive of a claim or defense."

We note that *Briscoe* was decided in the context of the grant of a motion to dismiss based on the alleged failure to state a claim upon which relief could be granted. We concluded at 100 Md.App. at 128, 640 A.2d 226:

The court did not state its reasons for granting the motion to dismiss. Thus, we should affirm the judgment if our

review of the record discloses that the court was legally correct.

In *Briscoe,* the parties had agreed that the appeal involved only issues of law and that therefore there was no need for a remand. We are satisfied that, although appellant has attempted to inject issues of fact concerning the question of the reasonableness of the arresting officers' actions, in essence we are concerned here only with questions of law.

 The appellate review process contemplates a distillation of issues from initial complaint to appeal and error. The screening of issues at the front end of a legal proceeding is accomplished by preliminary motions, the purpose of which is to address both substantive and procedural issues toward the end of separating out causes that are not legally cognizable or evidence that is inadmissible. A motion to dismiss (and formerly a demurrer) challenges the sufficiency of the complaint without resort by the court to any matters outside of the pleadings. As noted, once matters outside of the complaint are factored into the court's decision, the motion must be treated as one for summary judgment.

MARYLAND RULE 8–131 provides that "the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court, but the court may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal." Consonant with the distillation of issues as a legal proceeding progresses, requiring parties to obtain adjudication of an issue at the trial level results in compelling the complaining party to make a record unequivocally supporting his or her claim of error. It also provides the trial court with an opportunity to correct any potential error by implementing suggested curative action proposed by counsel and preventing the trial judge from being "sandbagged."

The requirement under MARYLAND RULE 2–311(f) that a hearing be granted, when requested on a motion where the ruling would be dispositive of a claim, fosters the adjudication of issues at the trial level in a manner that will permit an

appellate court to review the claims of error in their refined, rather than their raw state. Thus the lower court, in this case, was presented with eight counts in the amended complaint against five individual defendants and Prince George's County. Many of the causes of action overlapped and some probably could have been disposed of by the grant of a motion to dismiss.[4] The lower court, in this case, however, simply dismissed all counts without a hearing or giving any reasons in support thereof.

Ideally, when the distillation process works as it should, the moving party is in a position to accept the logic and reasoning of the court, (and—for that matter—opposing counsel) and simply abandon meritless and frivolous claims, thereby obviating the need for opposing counsel to respond to the same issues in subsequent proceedings, including appeals.

One such example of an abandonment by counsel in this case is that counsel for appellant, in oral argument before this Court, conceded that Maryland does not recognize the tort of negligent infliction of emotional distress. Had the issue been presented at a hearing before the trial court, counsel probably would have made the concession at that stage of the proceedings and that claim could have been removed as an issue on appeal. Other issues may well have been resolved at the trial level had there been a full airing before the lower court resulting in an enhanced economy of resources and effort as well as a more orderly process. While Maryland law permits an appellate court to assume that a trial court has considered everything presented to it in its ruling on a motion for summary judgment, the instant case presents a classic example of one in which the reasoning and thought processes would have been of assistance to counsel and would have brought the issues in this case into sharper focus. Thus, our decision not to remand this case for a hearing on the Motion to Dismiss or in the Alternative for Summary Judgment is based on the fact

---

4. As we have observed, the count asserting negligent infliction of emotional distress was the proper subject of appellees' motion to dismiss, rather than a motion for summary judgment.

that we believe appellant's own deposition testimony, in conjunction with other information before the court, renders baseless the primary and derivative claims of excessive force by the law enforcement officers. A hearing, however, would have afforded both counsel the opportunity to demonstrate as between dismissal and summary judgment why one disposition of a particular count was preferable over the other.

A remand of this case, in our view, with the inevitable outcome on remand, would be contrary to the very judicial economy we have observed is best achieved by a full airing of issues at the trial level. The lower court's summary dismissal has resulted in a record before us containing issues only indirectly addressed; however, a remand would not present the trial judge with an opportunity to adjudicate any legal issues not already addressed in this opinion. We hasten to underscore that, notwithstanding *Briscoe v. Baltimore*, it is the unique facts of this case that constrain us to affirm the lower court. The preferable practice, particularly when a ruling on a motion is dispositive of a claim, is to conduct a hearing and for the court to give the parties and counsel the benefit of the court's reasoning.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**