Linda M. HAWKES

v.

**UNIVERSITY PHYSICIANS, INC., et al.**

**No. Civ.A. WMN–96–3860.**

United States District Court,
D. Maryland.

Feb. 2, 1998.

Linda Hawkes, pro se.

Jeffrey E. Rockman, Serotte, Rockman & Wescott, PA, Baltimore, MD, for Defendants.

## MEMORANDUM

NICKERSON, District Judge.

Pending before the Court is Defendants' Motion to Dismiss the Amended Complaint, Paper No. 18. Plaintiff opposed the motion, and Defendants have replied. Upon a review of the motion and the applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that Defendants' motion will be granted.

Pro se Plaintiff Linda Hawkes, an African–American woman, filed her original complaint in this Court on December 12, 1996. In that Complaint, Plaintiff alleges various instances of unfair treatment on the part of her employer, Defendant University Physicians, Inc., ["UPI"] and several of her supervisors and co-workers. She alleges, *inter alia*, that various responsibilities previously assigned to her were taken away, that she was given menial tasks to perform, that she was subjected to "harsh treatment and harassment" by Defendants, and that several of her co-workers conspired to have her fired. At the center of the dispute between Plaintiff and her co-workers, according to the allegations in the original complaint, was Plaintiff's efforts to bring to light certain irregularities in the billing and accounting practices of UPI.

On December 23, 1996, Defendants filed a motion to dismiss the Complaint. On March 10, 1997, the Court granted that motion, noting that while it was difficult to discern the nature of Plaintiff's claims, "to the extent that the Court [could] understand those claims, [the Court], found them unsupportable under the facts alleged in the Complaint." March 10, 1997 Memorandum at 3.

Because the Complaint referenced the "Civil Rights Act" as one of the grounds for jurisdiction, the Court opined that Plaintiff "appears to be alleging, although this is not at all certain, that Defendants' treatment of her was racially motivated." *Id.* at 2. Plaintiff made no mention whatsoever of race in the factual allegations of the Complaint, however, and failed to even identify her own race or the race of any of the Defendants.

On March 19, 1997, Plaintiff filed a motion to amend her complaint. Defendants opposed the motion, not on the merits of the amended complaint, but arguing that the Court's March 10, 1997 order dismissing the first complaint was without leave to amend and should be given res judicata effect. Rejecting those arguments, the Court granted Plaintiff's motion on July 2, 1997.

Defendants now move to dismiss the Amended Complaint in its entirety, providing a plethora of alternative grounds for dismissing the various counts. Reviewing the pleadings, the Court finds that the majority of Defendants' arguments are valid. The Court need not address, however, every one of the alternative arguments as the viability of Plaintiff's claims turns on the resolution of the few issues that are discussed infra.

▇ To support her claims under 42 U.S.C. §§ 1981(a)(b) and (c), 1983, 1985(3) and 1986, Plaintiff now alleges that the actions taken against her were on account of her race. Plaintiff's own pleadings belie that claim.

In the 46 paragraphs of the original complaint, Plaintiff nowhere mentions race. Her allegations pointed to a single cause for the adverse treatment under which she allegedly suffered, *i.e.*, her disagreement with and efforts to expose the accounting practices of her co-workers. In opposing the motion to dismiss the original complaint, Plaintiff summarized her allegations as follows:

> Plaintiff filed an action against Defendants for specific wrongs that were inflicted upon her by her employer, including her "co-workers." Plaintiff discovered violations at their place of employ and spoke out about them to her supervisors. Plaintiff's reward for informing other corporate

employees of possible violations of law was harassment, threats and finally termination from employment.

Opp. to Mot. to Dismiss Complaint at 2. She stated elsewhere in her opposition:

> Defendants retaliated against Plaintiff after Plaintiff informed superiors of irregularities in the workplace.
>
> . . .
>
> Defendants did act with evil motives in harassing, injuring and terminating Plaintiff after she exercised free speech.
>
> . . .
>
> Defendants conspired to violate Plaintiff's civil rights by punishing her for being an upright and honorable employee.
>
> . . .
>
> Defendants acted in concert to conspire to violate the rights of plaintiff to further their fraudulent activities.

*Id.* at 3–5.

The only statement that even tangentially mentions race in the opposition to the motion to dismiss the original complaint is the following:

> Civil Rights statute, Sec.1981 ... provides right to sue on claim that employer retaliated against employee for filing a complaint of racial discrimination, whether or not the retaliation itself was racially motivated. CLAIM: Plaintiff filed a complaint with her superiors and Human Resources Dept.

*Id.* at 4. The Court notes, however, that while Plaintiff has alleged that she attempted to file a grievance on or about July 8, 1996, she does not indicate that the grievance had anything to do with race. Presumably, Plaintiff was complaining of the treatment she believed was directed at her in retaliation for her "whistle blowing" activities. In addition, this attempt to file a grievance did not occur until two days before Plaintiff's employment was officially terminated. Thus, retaliation for filing a grievance could not have been the motivation behind the vast majority of the conduct about which Plaintiff complains, as it

all occurred prior to her attempt to file any grievance.

In her Amended Complaint, Plaintiff again barely mentions the issue of race. The Amended Complaint contains 189 paragraphs which focus on the Plaintiff's efforts to uncover fraudulent billing practices in UPI and Defendants efforts to resist disclosure and to punish Plaintiff for her activities. The Amended Complaint highlights a June 18, 1996 memo Plaintiff sent to her supervisors and various physicians in the department "detailing the suspicious and unauthorized activities she had witnessed." Amended Complaint at ¶ 53.

Throughout the Amended Complaint, Plaintiff avers that she was harassed and ultimately discharged because of the position she took as to these suspicious activities. The Amended Complaint declares, "The plaintiff maintains that the reason she was 'laid off' was in retaliation for what she had documented in the June 18th memo." *Id.* at ¶ 99 (emphasis added). Plaintiff also alleges that other members of the accounting staff were forced to resign or threatened with termination in the ongoing effort to cover up Defendants' activities. The race of these other staff members was not identified.

There is no mention in the Amended Complaint of race, in fact, until ¶ 78, where Plaintiff alleges that, in November of 1995, she was told that the position of Practice Manager, about which she was interested, would be filled by an unidentified white male. Plaintiff admits, however, that this unidentified white male was never given the position. In fact, Plaintiff does not allege that the position was ever filled.[1] Plaintiff herself assumed some of the responsibilities of that position when she was made "co-manager." *Id.* at ¶ 82. Plaintiff also admits that the person with the responsibility for filling that position, Defendant Darlene Irby–Adesalu, was also Black.[2]

Even in her most recent pleading, Plaintiff's Opposition to the Motion to Dismiss the Amended Motion, Plaintiff remains ambigu-

---

1. Plaintiff argues in her opposition that the position was eventually filled by a different white employee, but that allegation is not in the Amended Complaint.

2. The Court also assumes that the former Practice Manager was Black. Plaintiff stated that she was told that the administrators "didn't want a Black person as manager *this time*." *Id.* at ¶ 79.

ous as to whether she is claiming that race was a factor in the treatment she was given by Defendants. While Plaintiff argues that she includes claims of racial discrimination in her Amended Complaint, she states elsewhere uncategorically that *"the underlying reason* for the Defendants' actions were (sic) the prevention of disclosure of certain fraudulent activities." Opp. at unnumbered page 4 (emphasis added).

Aside from the lack of consistency with her own statements as to the cause of her treatment, the Court finds that Plaintiff's factual allegations are simply insufficient to give rise to any inference that Defendants' conduct was racially motivated. As to her failure to be given the Practice Manager position in November of 1995, the Court again notes that the decision maker was Black. Furthermore, Plaintiff was placed in the position of co-manager.

The only other specific adverse employment action that Plaintiff alleges she suffered related to a reorganization of UPI that occurred in June of 1996. Because of the reorganization of the department, it was announced that all staff positions would be eliminated effective July 10, 1996, but that everyone would be given the opportunity to apply for a position in the new structure. Plaintiff applied for a single position, a position for which Ms. Irby–Adesalu was to do the interviewing and hiring. The position was ultimately filled by Defendant Evelyn Ward, who is Black.[3]

Plaintiff is entirely correct that courts have allowed claims of discrimination to stand where the alleged harasser is of the same class as the plaintiff, or where not all members of the plaintiff's class are discriminatorily treated. *See Woerner v. Brzeczek,* 519 F.Supp. 517 (N.D.Ill.1981) (sex discrimination against a single female police officer); *Franceschi v. Hyatt Corp.,* 782 F.Supp. 712 (D.P.R.1992) (intra-racial discrimination). In those rare cases, however, there existed some factual basis for the inference that racial discrimination had occurred. Here, there simply is none.

It is abundantly clear from the pleadings that Plaintiff is convinced that the adverse employment actions of which she complains occurred, not because of her race, but because of her efforts to uncover what she believed to be improper practices in her department. Were the Court to allow her to proceed on federal claims premised on a charge of racial discrimination, the Court would be accepting a theory that is inconsistent with Plaintiff's own version of the events.

■ In attempting to support a claim under Section 1983, Plaintiff also advances a "free speech" argument. Plaintiff contends that she was terminated for disseminating the June 18, 1996 memo regarding the department's billing practices. Defendants counter that, even if this allegation were true, the contents of the memo did not constitute a "matter of public concern" and, thus, is not protected speech under the First Amendment. *See, Holland v. Rimmer,* 25 F.3d 1251, 1254 (4th Cir.1994) ("if speech cannot be characterized as relating to any matter of political, social, or other concern of the community, the court's inquiry ends there").

The Court must agree.

Plaintiff argues that memo addressed a matter of public concern "because it involved writing off claims that management knew nothing about and deliberately not billing for patient services, which would greatly affect the revenues of [UPI]." Opp. to Mot. to Dismiss Amended Complaint at unnumbered page 7. The revenues of UPI, a private corporation, however, are obviously not a matter of public concern. Thus, even assuming the truth of Plaintiff's allegations, the Amended Complaint raises no First Amendment issues.

In addition to the claims based on federal civil rights statutes, Plaintiff brings the following state law claims: "Breach of Fiduciary Duty," Count V; "Constructive Fraud," Count VI; "Negligent Misrepresentation," Count VII; "Fraudulent Misrepresentation,"

---

**3.** The Court also notes that two of the three individuals that Plaintiff alleges harassed her were Black.

Count VIII; "Gross Negligence;" Count IX; and "Negligent Infliction of Emotional and Mental Distress," Count X. These state claims are equally unsupported.

■ Plaintiff's "Breach of Fiduciary Duty" and "Gross Negligence" and "Negligent Misrepresentation"[4] claims are inconsistent with the employment at-will doctrine long established under Maryland law. "To impose a duty on employers to exercise reasonable care ... would eviscerate the employment-at-will presumption." *Kahalas v. Claims Administration Corp.*, 1995 WL 795666, 69 Fair Empl.Prac.Cas. (BNA) 816 (D.Md. Mar 16, 1995).

■ Plaintiff's "Constructive Fraud" and "Fraudulent Misrepresentation" claims are based on the allegation that certain Defendants misrepresented to the state unemployment office that Plaintiff's position had been eliminated. It is unclear how this alleged misrepresentation could have been made for the purpose of defrauding Plaintiff. It is also not clear how it could have caused Plaintiff any injury. If anything, the representation inures to the Plaintiff's benefit as apparently, she was able to collect unemployment pay on the basis of the representation.

■ Finally, as to Plaintiff's "Negligent Infliction of Emotional Distress" claim, Maryland recognizes no such cause of action. *See, Williams v. Prince George's County*, 112 Md.App. 526, 685 A.2d 884 (1996). If Plaintiff was intending to bring a claim for intentional infliction of emotional distress, the allegations in the Amended Complaint fall far short of the "extreme and outrageous" standard required to state a claim under Maryland law. *See Jones v. Harris*, 35 Md.App. 556, 371 A.2d 1104 (1977).

For all the above-stated reasons, Defendants' motion to dismiss the amended complaint will be granted. A separate order will issue.

---

**4.** In Plaintiff's "Negligent Misrepresentation" claim, she alleges that certain Defendants had a " 'legal duty' to start an investigation and find out the truth about the activities of the other defendants," Amended Complaint at ¶ 163, and that they were negligent in failing conduct that investigation. *Id.* at ¶ 167. While perhaps there may have been some duty owed to UPI or its shareholders, there is no basis under Maryland law to extend such a duty to Plaintiff.