UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MARY KHAN; ABDUL KHAN, On their
own behalves and on behalf of their
deceased child, Sumundar Ocean
Skylander Khan; On behalf of their
minor children, Arbab Eagle
Washington Khan, Azam Justice
Abraham Khan, Amber Diamond
Princess Khan, United World Peace
Khan,

*Plaintiffs-Appellants,*

v.

No. 01-1049

WORCESTER COUNTY; TOWN OF
BERLIN,

*Defendants-Appellees,*

and

THE STATE OF MARYLAND;
MARYLAND STATE POLICE; JOHN DOE;
RICHARD DOE, Unnamed law
enforcement officers,

*Defendants.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(CA-99-1617-AMD)

Argued: October 29, 2001

Decided: December 28, 2001

Before WILKINSON and GREGORY, Circuit Judges, and
Malcolm J. HOWARD, United States District Judge for the
Eastern District of North Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Howard Jay Needle, Baltimore, Maryland, for Appellants. Daniel Karp, ALLEN, JOHNSON, ALEXANDER & KARP, Baltimore, Maryland, for Appellees. **ON BRIEF:** Cindy Maskol, SEMMES, BOWEN & SEMMES, Baltimore, Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Mary and Abdul Khan appeal the grant of summary judgment in favor of the municipal defendants and the denial of their motion to amend. For the following reasons, we affirm.

I.

On June 3, 1996, an armed robbery took place in Salisbury, Maryland. The suspected perpetrator was a man named Donald Barnes. Barnes' picture appeared in the newspaper, and a confidential informant allegedly reported that he had observed the suspect enter Apartment B-8 of the Bay Terrace Apartments in Berlin, Maryland.

Mary and Abdul Khan and their four children were living in Apartment B-8 on June 4, 1996. That afternoon, Mr. Khan was working on his van in the parking lot in front of the building. Mrs. Khan and the children were nearby. Several police vehicles and at least eight law enforcement officers who were wearing bullet proof vests and carry-

ing weapons arrived on the scene. Because Mr. Khan was under his van, Mrs. Khan approached several of the officers as they were heading towards the building. Mrs. Khan indicated that she lived in apartment B-8, and the officers explained that they wanted to speak to her in her apartment.

Despite being nervous and frightened, Mrs. Khan led the officers up the stairs and unlocked the door to the apartment. Once inside, the officers showed her a newspaper clipping with the photograph of the robbery suspect. They asked her if she had ever seen the man in the picture, and she responded that she had not. An officer informed Mrs. Khan that they had reason to believe the man was hiding in her apartment. Mrs. Khan explained that she and her family were the only ones who lived there, and that no one else had been in the apartment. The officers asked if they could look for the suspect in the apartment. Mrs. Khan gave the officers permission to look, stating, "But I'm sure he's not here, but if you really insist, you can check and make sure he's not here."

According to Mrs. Khan, the officers proceeded to conduct a "top-to-bottom search of everything" in the apartment. They opened kitchen and bureau drawers, closets, and boxes, sifting through the contents of each. They emptied the pockets of Mr. Khan's clothing onto the bed, and examined all items they found while searching, including personal items. Minutes into the search, Mr. Khan entered the apartment. The officers showed him a picture and asked him whether he had seen the suspect. He responded that he had not. Mr. Khan and his wife were then interrogated in separate rooms of the apartment. The officers determined that the robbery suspect was not in the Khans' apartment.

The Khans were upset by the search of their apartment and the questioning by the officers. They were unable to sleep, and Mrs. Kahn would not stay in the apartment with the children while her husband was at work the next day. That evening, they drove to New Jersey to see friends, and did not return until 6 a.m. the next day. The children slept in the van, but Mr. and Mrs. Khan did not sleep for the second night in a row. That same morning, Mrs. Kahn went into labor and delivered Sumunder Ocean Skylander Khan two weeks prior to her

due date. The baby experienced respiratory problems, requiring an extra three days in the hospital. The baby died three months later.

The Khan children were upset by the activities they witnessed. Mr. Khan allegedly suffered pain in his chest and arm for seventeen months after the incident, but never sought medical care because his family lacked health insurance. The Khans became fearful of living in Berlin. Within the year, the family moved to Norfolk, Virginia.

The Khans filed this action on June 4, 1999 (the day before the three year statute of limitations expired), against Worcester County, Maryland, the Mayor and Council of the Town of Berlin, the State of Maryland, the "Maryland State Police" (an entity without legal existence), and two unknown law enforcement officers. The Khans asserted a generalized claim under 42 U.S.C. § 1983, which alleged a violation of the Fourth Amendment (Count I), a claim directly under the Fourth and Fifth Amendments (Count II), an Equal Protection claim under the Fourteenth Amendment (Count III), "violations of the constitution and laws of the State of Maryland" (Count IV), negligence (Count V), gross negligence (Count VI), intentional infliction of emotional distress (Count VII), and false imprisonment (Count VIII).[1]

The State of Maryland and the "Maryland State Police" were dismissed from the case on a preliminary motion. Discovery proceeded among the remaining parties. Defendants filed a motion for summary judgment on May 26, 2000. Plaintiffs asked for and received two extensions of time within which to respond to the motion, responding two months later on July 24, 2000. During that time, plaintiffs made no effort to amend the complaint.

On October 10, 2000, the district court granted the defendants' motion for summary judgment. For Count I, the court held that no facts had been adduced from which one could conclude that the events at issue were the result of a municipal policy, custom, or practice, and that the defendants were therefore entitled to summary judgment on the Fourth Amendment claim arising under § 1983. The court

---

[1]Count IX for Wrongful Death of Sumunder Ocean Skylander Khan, who was born prematurely two days after the incident, was dismissed with prejudice by stipulation of the parties.

also held that direct actions against municipalities under the federal constitution are not permitted, and Counts II and III therefore failed to state claims upon which relief could be granted. With regard to Count IV, the state constitutional claim, the district court found that summary judgment was appropriate even though the municipal defendants could theoretically be vicariously liable for such a claim, because there was no genuine dispute of material fact as to whether the officers who entered the apartment acted with malice.

The district court ruled in favor of the defendants on the common law claims as well, finding summary judgment appropriate because the evidence did not support the claims of negligence, false imprisonment, and intentional infliction of emotional distress. In addition, the court noted that while the plaintiffs had made a "casual reference" in their opposition to the summary judgment motion to a desire to amend the complaint to assert claims against individual law enforcement officers, they had inexplicably never filed a motion for leave to amend. The court invited them to do so.

The plaintiffs filed a motion for leave to amend and add Detective John Cox to all counts. They also filed a motion to vacate, alter or amend the order granting summary judgment. Defendants opposed both motions, and on November 28, 2000, the court denied the motions. The Khans appeal the grant of summary judgment on the state constitutional claim and the common law tort claims. They also appeal the denial of their motion to amend.

## II.

We review a grant of summary judgment *de novo*. *JKC Holding Co., LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

While summary judgment rulings are reviewed *de novo*, this Court reviews a district court's decision to grant or deny a motion to amend for abuse of discretion. *HCMF Corp. v. Allen*, 238 F.3d 273, 276-77

(4th Cir. 2001). A motion to amend should be denied when the amendment would be prejudicial to the opposing party, when there has been bad faith on the part of the moving party, or when the amendment would be futile. *Id.* at 276 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 242 (4th Cir. 1999)).

III.

The district court correctly recognized that in Maryland, local government entities have *respondeat superior* liability for civil damages resulting from state constitutional violations committed by their agents and employees within the scope of their employment. *DiPino v. Davis*, 729 A.2d 354, 372 (Md. 1999). The district court also correctly stated that police officers, as municipal officials, enjoy a statutory qualified immunity when carrying out their discretionary duties and acting within the scope of their employment, provided that they act without malice. Md. Code Ann., *Cts. & Jud. Proc.* § 5-507(b)(1). Under the Maryland Local Government Tort Claims Act, a municipality can assert this qualified immunity on an officer's behalf. Md. Code. Ann., *Cts. & Jud. Proc.* § 5-303(e). The actions of police officers within the scope of their law enforcement function are quintessential discretionary acts. *See Williams v. Prince George's County*, 685 A.2d 884 (Md. Ct. Spec. App. 1996). Viewed in the light most favorable to the Khans, there is evidence that the officers conducted a search that exceeded the scope of Mrs. Khan's consent. Therefore, the key factual question in determining whether immunity applies is whether the searching officers acted with malice.

Malice, for purposes of public official immunity, is "actual malice." *Shoemaker v. Smith*, 725 A.2d 549, 560 (Md. 1999). Actual malice required to defeat official immunity requires an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and wilfully injure the plaintiff. *Id.* Having considered the record, the briefs, and the applicable law, we simply find no evidence that the searching officers acted with malice.

Appellants, relying on the Supreme Court's recent decision in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133 (2000), argue that malice can be inferred from the actions of the officers.

They offer no evidence that would suggest malice, only speculation that the officers violated their rights because they were an interracial couple.[2] *Reeves*, an age discrimination case, allows a trier of fact to infer discrimination from the falsity of an employer's explanation for an adverse employment action. *Id.* at 147. *Reeves*, however, does not stand for the proposition that a non-movant can create a genuine issue of material fact from mere speculation. Inferences must "fall within the range of reasonable probability and not be so tenuous as to amount to speculation and conjecture." *Thompson Everett, Inc. v. National Cable Advert., L.P.*, 57 F.3d 1317, 1323 (4th Cir. 1995). Here, there are no facts from which we can infer that the officers were motivated by hate or ill-will. Although appellants contend the officers acted with malice, they provide no proof other than their bald assertions.[3] As the district court recognized, there is no showing here that the officers were motivated by and acted out of anything more than a regrettable overzealousness in pursuit of a legitimate law enforcement goal —the apprehension of a felony suspect.

IV.

The district court granted summary judgment on each of the Khan's common law tort claims, finding no dispute of material fact as to the absence of least one critical element of each claim. We affirm the grant of summary judgment on these claims on the reasoning of the district court. We note that even if all elements of these torts could be proved, under Maryland law, local government entities are immune from liability for common law torts when their employees commit the torts while acting in a *governmental* capacity. *DiPino*,729 A.2d at 370 (emphasis added). In this case the officers were purporting to enforce the state criminal law. This is "quintessentially governmental in nature." *Id.* Therefore, there can be no common law liability on the part of the local governmental entities.

---

[2]Mr. Khan is American-Pakistani and Mrs. Khan is Caucasian.

[3] Mrs. Khan was asked if the officers used any specific words that she understood to have a racial or ethnic connotation or to be a racial or ethnic slur. She responded in the negative.

## V.

The appellants sought to amend their complaint to include Detective Cox in order to proceed against him individually on the § 1983 claim. The district court denied the amendment, finding that Detective Cox, having testified without regard for his own potential liability, was prejudiced by the plaintiff's inexcusable delay in joining him. We find that the district court did not clearly err in denying the Khan's untimely motion to amend.

## VI.

For the foregoing reasons, the judgment of the district court is affirmed.

*AFFIRMED*