DAVIS, Judge.
 

 August 29, 2001, appellants
 
 [1]
 
 Mary Ann Hines and her husband Leon Hines filed an eight-count complaint in the Circuit Court for Harford County against appellees Deputy Sheriff John French, Sheriff Joseph Meadows, and Sergeant Gary Vernon of the Harford County Sheriffs Department, the Harford County Sheriffs Department, Harford County, the State of Maryland, Baltimore County 911 Dispatcher Jane Doe, Chief Terrence Sheridan of the Baltimore County Police Department, the Baltimore County Police Department (BCPD), and Baltimore County. Appellants alleged assault, battery, false imprisonment, false arrest, malicious prosecution, intentional infliction of emotional distress, negligence, and loss of consortium.
 

 
 *545
 
 The BCPD, Baltimore County, and Chief Terrence Sheridan filed a Motion to Dismiss on September 18, September 24, and October 3, 2001, respectively. By orders dated October 16, 2001, the trial court granted the motions to dismiss of Baltimore County and Chief Terrence Sheridan. Additionally, on October 31, 2001, the State of Maryland filed a Motion to Dismiss and Sheriff Meadows, Deputy French, Sergeant Vernon, the Harford County Sheriffs Department, and Harford County collectively filed a Motion to Dismiss and/or For Summary Judgment. The circuit court eventually ruled on the outstanding motions in a memorandum opinion and order filed on September 30, 2003, wherein the court granted the motion to dismiss of the BCPD and the State of Maryland. The court also granted the collective Motions to Dismiss and/or For Summary Judgment of Sheriff Meadows, Deputy French, Sergeant Vernon, the Harford County Sheriffs Department, and Harford County.
 

 Appellants filed their timely notice of appeal on October 29, 2003, presenting two questions for our review, which we combine into one question and rephrase as follows:
 

 Did the trial court err by granting appellees’ motions to dismiss and/or motion for summary judgment?
 

 We answer appellants’ question in the affirmative and, therefore, reverse in part, and affirm, in part, the judgment of the circuit court.
 

 FACTUAL BACKGROUND
 

 On the evening of August 29, 1998, appellant was returning to her home in Harford County from a party in Baltimore City. She was traveling alone in a 1998 Dodge truck bearing Maryland license tag 17F118. As she proceeded eastbound on Route 40, Baltimore County 911 dispatch issued a “be on the lookout” for a green Dodge truck with Maryland license 17F118. The report noted that the vehicle had been involved in a hit-and-run accident at the intersection of Mohrs Lane and Route 40 in Baltimore County—an intersection appellant would have crossed en route to Harford County. At approxi
 
 *546
 
 mately 8:15 p.m., Deputy French, who had received the dispatch call, observed appellant traveling on Route 40 in Harford County and, consequently, he began to pursue her.
 

 At this point, the parties’ version of the events diverge into two conflicting accounts of appellant’s traffic stop and subsequent arrest. According to appellant, as she traveled in the right lane of the two eastbound lanes, she observed a police vehicle with flashing lights approach from the rear. The vehicle pulled along side her truck and the police officer motioned for her to pull over, which appellant claims she “did as promptly as was possible, given the speed of the traffic and the need to pull off onto the right shoulder of the road.” After appellant pulled over, Deputy French, who was not in uniform, rapidly approached appellant’s vehicle with his gun pointed at her and ordered her to exit the truck.
 

 Appellant claims that, as she exited the vehicle, Deputy French “noted that she had TMJ scarst[
 
 2
 
 ] on her right jaw, and that she must be in pain, as they were so fresh.” He then “grabbed her and threw her up against the side of the truck” and, “[ajfter slamming her head into the side of the truck, while laughing, [Deputy French] told [appellant] that it must have really hurt when her face hit the side of the truck.” Deputy French then “pulled her crippled left arm up behind her back and handcuffed her hands so tightly” that appellant suffered lacerations on her wrists and hands. It was not until after the handcuffs were secured that Deputy French told appellant that she was a suspect in a hit-and-run accident.
 

 Appellant asserts that she was subsequently placed in a police vehicle while Deputy French inspected her truck for damage. She maintains that Deputy French became visibly irritated when he did not discover damage to her vehicle and that he refused to loosen her handcuffs despite her protests that they were too tight. Afterward, other officers from the Harford County Sheriffs Department arrived and appellant
 
 *547
 
 was asked to submit to a breath test. She consented and several breath tests were performed but none indicated the presence of alcohol.
 

 Appellees present a dramatically different version of events concerning appellant’s traffic stop and arrest. According to Deputy French, he followed appellant with his lights and siren on for approximately one mile, during which time he observed her erratically drive hallway onto the shoulder of the road three times. Trooper John Cook of the Maryland State Police joined the pursuit and, with his siren and lights activated, he pulled along side appellant, motioning for her to pull over. Appellant shook her head to indicate a negative response and continued driving. Shortly thereafter, however, appellant pulled over but would not exit the vehicle or place her hands out the window in view of the officers when prompted to do so by Deputy French. As Deputy French approached appellant’s track, he noticed her reaching down on the inside of the truck door and, consequently, he drew his firearm and ordered her out of the vehicle. Appellant then complied with Deputy French’s orders and she was subsequently placed under arrest. Although preliminary breath tests administered at the scene did not produce any positive results, appellant admitted to Deputy French that she was taking pain medication for chronic pain associated with recent surgery.
 

 Appellant was transported to the Harford County Sheriff’s Department where she was issued three citations, charging her with failure to drive in designated lane, eluding police, and negligent driving. She was released later that evening, after it was determined that she was not involved in a hit-and-run accident. Appellants returned to the sheriffs department four days later, on September 2, 1998, in an attempt to lodge an internal complaint against Deputy French. They spoke with Sergeant Vernon, assigned to the Harford County Sheriff Department’s Internal Affairs Division, but appellants assert that he refused to take their claim. Sergeant Vernon reportedly stated that they “should be thankful that the police officer pulled [appellant] over that night[ ] because she was in no condition to drive.”
 

 
 *548
 
 On December 14, 1998, proceedings were conducted in the District Court of Maryland for Harford County regarding appellant’s three traffic citations. Pursuant to an agreement between appellant and the prosecutor, the charge of eluding police was placed on the stet docket, a
 
 nolle prosequi
 
 was entered on the negligent driving charge, and a not guilty agreed statement of facts was presented on the charge of failure to drive in designated lane. Based on the not guilty agreed statement of facts, the district court found appellant guilty of failure to drive in designated lane.
 

 As noted,
 
 supra,
 
 appellants subsequently filed their complaint in the Circuit Court for Harford County on August 29, 2001. Following the trial court’s granting of appellees’ various motions to dismiss and for summary judgment, appellants filed an appeal.
 

 LEGAL ANALYSIS
 

 Appellants contend that the trial court erred by granting appellees’ motions to dismiss and/or for summary judgment. Concerning the motions to dismiss, they aver that their complaint successfully stated causes of action for which relief could be granted in regard to all the counts alleged and appellees named in the complaint. Likewise, the court also erred by granting summary judgment of the remaining counts, maintain appellants, because there were disputes of material facts that were either disregarded or decided in favor of appellees.
 

 “In reviewing a motion to dismiss for failure to state a claim under Maryland Rule 2-322(b), trial and appellate courts must assume the truth of all well-pleaded, relevant, and material facts in the complaint and any reasonable inferences that can be drawn therefrom.”
 
 Allied Inv. Corp. v. Jasen,
 
 354 Md. 547, 555, 731 A.2d 957 (1999) (citing
 
 Bobo v. State,
 
 346 Md. 706, 708, 697 A.2d 1371 (1997)). “Dismissal is proper only if the alleged facts and permissible inferences, so viewed, would, if proven, nonetheless fail to afford relief to the plaintiff.”
 
 Bobo,
 
 346 Md. at 709, 697 A.2d 1371. Thus, we will
 
 *549
 
 affirm the trial court only if the dismissal was legally correct.
 
 Jasen,
 
 354 Md. at 555, 731 A.2d 957;
 
 Bobo,
 
 346 Md. at 709, 697 A.2d 1371.
 

 The trial court may grant summary judgment only when “there is no genuine dispute of material fact” and “the party in whose favor judgment is entered is entitled to judgment as a matter of law.” Md. Rule 2-501(e);
 
 Bagwell v. Peninsula Regional Med. Ctr.,
 
 106 Md.App. 470, 488, 665 A.2d 297 (1995). “ ‘In reviewing a grant of a summary judgment, we are first concerned with whether a genuine dispute of material fact exists’ and then whether the movant is entitled to summary judgment as a matter of law.”
 
 Grimes v. Kennedy Krieger Inst., Inc.,
 
 366 Md. 29, 71, 782 A.2d 807 (2001) (quoting
 
 Williams v. Mayor & City Council of Baltimore,
 
 359 Md. 101, 113, 753 A.2d 41 (2000)).
 

 The purpose of summary judgment is to determine whether there are facts in dispute that must be resolved through a more formal resolution process, such as a trial on the merits.
 
 Eng’g Mgmt. Servs. v. Md. State Highway Admin.,
 
 375 Md. 211, 229, 825 A.2d 966 (2003). Thus, in order to defeat a motion for summary judgment, the party opposing the motion must present admissible evidence demonstrating the existence of a dispute of material fact.
 
 Tennant v. Shoppers Food Warehouse Md. Corp.,
 
 115 Md.App. 381, 386, 693 A.2d 370 (1997). “ ‘A material fact is a fact the resolution of which will somehow affect the outcome of the case.’ ”
 
 Grimes,
 
 366 Md. at 72, 782 A.2d 807 (quoting
 
 King v. Bankerd,
 
 303 Md. 98, 111, 492 A.2d 608 (1985)). Moreover, “[i]n determining whether a summary judgment has properly been granted, an appellate court must consider the facts stated, and the proper inferences to be drawn therefrom, in the light most favorable to the party against whom the motion is made.”
 
 Burwell v. Easton Memorial Hospital,
 
 83 Md.App. 684, 687, 577 A.2d 394 (1990).
 

 If there is no dispute of material facts, then our role is to determine whether the trial court was correct in granting summary judgment as a matter of law.
 
 Tennant,
 
 115 Md.
 
 *550
 
 App. at 386, 693 A.2d 370;
 
 Beatty v. Trailmaster Products Inc.,
 
 330 Md. 726, 737, 625 A.2d 1005 (1993). Whether summary judgment is properly granted as a matter of law is a question of law and therefore review of the granting of summary judgment is
 
 de novo. Eng’g Mgmt. Servs.,
 
 375 Md. at 229-30, 825 A.2d 966. “The standard of appellate review of a summary judgment is whether it is ‘legally correct.’ ”
 
 Id.
 
 at 229, 825 A.2d 966.
 

 Assault
 

 The trial court granted appellees’ motion to dismiss appellants’ assault count against Deputy French and Sheriff Meadows ruling that the claim was barred because the statute of limitations had expired prior to the filing of their complaint. Under Md.Code (2002 RepLVol.), Cts. & Jud. Proc. (C.J.) § 5-105, “[a]n action for assault, libel, or slander shall be filed within one year from the date it accrues.” The incident in question occurred on August 29, 1998 and appellants did not file their complaint until August 29, 2001—three years later. The trial court, therefore, was correct in granting appellees’ motion to dismiss the assault count. Appellants’ assault claim was time-barred and, thus, even if the facts alleged could be established at trial, the assault claim was properly dismissed.
 
 [3]
 

 Battery, False Imprisonment, and False Arrest
 

 Deputy French and Sheriff Meadows were also named as the defendants in appellants’ counts for battery, false imprisonment, and false arrest. The trial court granted summary judgment in regard to all three counts after finding that Deputy French had legal justification to arrest appellant. In their brief, appellants assert that the court resolved factual disputes in reaching its conclusion that Deputy French had legal justification to arrest and, therefore, they aver that summary judgment was inappropriate.
 

 
 *551
 
 False imprisonment, false arrest, and assault and battery “can only occur when there is no legal authority or justification for the arresting officer’s actions.”
 
 Williams v. Prince George’s County,
 
 112 Md.App. 526, 554, 685 A.2d 884 (1996);
 
 see also Ashton v. Brown,
 
 339 Md. 70, 119-21, 660 A.2d 447 (1995).
 
 [4]
 
 Legal justification was defined in
 
 Great Atl. & Pac. Tea Co. v. Paul,
 
 256 Md. 643, 655, 261 A.2d 731 (1970), wherein the Court of Appeals stated:
 

 When the cases speak of legal justification we read this as equivalent to legal authority.... Whatever technical distinction there may be between an “arrest” and a “detention” the test whether legal justification existed in a particular case has been judged by the principles applicable to the law of arrest.
 

 Relying on her version—which is disputed by Deputy French—of what transpired on August 29, 1998, appellant, in essence, argues that Deputy French’s sole legal justification to arrest was based on the charges of failure to drive in designated lane, eluding police, and negligent driving. Appellants’ rendition of the facts indicate that appellant was unimpaired, stayed in her lane of traffic, promptly pulled over upon seeing Deputy French’s motioning, and immediately complied with all of his commands. Deputy French’s recounting of the incident, however, suggests that he pursued appellant for over one mile with his emergency lights and siren activated. He maintains that appellant drove erratically on and off the road, that Trooper Cook pulled along side her vehicle and motioned for her to stop but that she refused and, when appellant finally did stop, she was unwilling to exit her vehicle.
 

 
 *552
 
 Although appellant relies on her version of what occurred prior to her exiting her vehicle, the critical material fact which she does not dispute is that Deputy French began to pursue appellant in response to information relayed to him from the 911 dispatch—namely, that her Dodge truck, with Maryland license plate number 17F118, had been involved in a hit-and-run accident. Md.Code (2002 Repl.Vol.), Transp. (T.P.) § 26-202, titled, “Power to Arrest,” provides, in pertinent part-
 

 ía)
 
 In
 
 general.—A police officer may arrest without a warrant a person for a violation of the Maryland Vehicle Law, including any rule or regulation adopted under it, or for a violation of any traffic law or ordinance of any local authority of this State, if:
 

 (3) The officer has probable cause to believe that the person has committed the violation, and the violation is any of the following offenses:
 

 (vi) Any offense that caused or contributed to an accident resulting in bodily injury to or death of any person;
 

 Probable cause has been defined as “ ‘facts and circumstances sufficient to warrant a prudent (person) in believing that the (suspect) has committed or was committing an offense.’ ”
 
 Okwa v. Harper,
 
 360 Md. 161, 184, 757 A.2d 118 (2000) (quoting
 
 DiPino v. Davis,
 
 354 Md. 18, 32, 729 A.2d 354 (1999)).
 

 Deputy French had legal justification to arrest appellant under T.P. § 26-202(a)(3)(vi) because he had probable cause to believe that she had “caused or contributed to an accident resulting in bodily injury to or death of any person.” It is undisputed that the information issued by the 911 dispatch included the make and model of appellant’s truck, her Maryland license tag number, and her approximate location on Route 40. Deputy French had no reason to disbelieve the information and, upon observing appellant driving on Route 40 in a Dodge truck with tag number 17F118, he had sufficient probable cause to stop and place her under arrest. Conse
 
 *553
 
 quently, we hold that, viewing all facts in a light most favorable to appellants, Deputy French and Sheriff Meadows were entitled to judgment as a matter of law concerning appellants’ counts for battery, false imprisonment, and false arrest.
 

 Malicious Prosecution
 

 Under count five of their complaint, appellants alleged that Deputy French and Sheriff Meadows instituted a malicious prosecution by issuing the three traffic citations, which as noted,
 
 supra,
 
 charged appellant with failure to drive in designated lane, eluding police, and negligent driving. The circuit court granted summary judgment on the malicious prosecution count, holding that one of the four elements of the tort had not been alleged in the pleadings.
 

 In order to establish the tort of malicious prosecution, a plaintiff must show:
 

 1) the defendant instituted a criminal proceeding against the plaintiff;
 

 2) the criminal proceeding was resolved in the plaintiffs favor;
 

 3) the defendant did not have probable cause to institute the proceeding; and
 

 4) the defendant acted with malice or a primary purpose other than bringing the plaintiff to justice.
 

 Okwa,
 
 360 Md. at 183, 757 A.2d 118 (citing
 
 DiPino,
 
 354 Md. at 54, 729 A.2d 354).
 

 It is not contested that Deputy French issued appellant three traffic citations and, thus, that criminal proceedings were instituted against her. The disposition of two of the citations, however, was not resolved in her favor. Appellant was found guilty of the charge of failure to stay in designated lane and was fined seventy-three dollars. Additionally, pursuant to an agreement with the prosecutor, the charge for eluding police was placed on the stet docket. A stet on a charge resulting from an agreement with the prosecutor is not a verdict in favor of appellant.
 
 See State v.
 
 
 *554
 

 Meade,
 
 101 Md.App. 512, 531-33, 647 A.2d 830 (1994). Because the pleadings and factual documents before the trial court indicated that the second element for malicious prosecution had not been satisfied, the court was correct in granting summary judgment regarding the charges of failure to stay in designated lane and eluding police.
 

 The citation for negligent driving, however, had a different outcome—namely, a disposition in appellant’s favor. As discussed,
 
 supra,
 
 the agreement between appellant and the prosecutor also resulted in a
 
 nol pros
 
 of the negligent driving charge. A
 
 nol pros
 
 acts as a dismissal and, thus, the prosecution of appellant for negligent driving ended in her favor. Therefore the issue in the instant case becomes whether appellant has satisfied the latter two elements of malicious prosecution.
 

 Under the third element, appellant may only recover if she demonstrates the absence of probable cause for instituting the prosecution. In deciding whether probable cause was present, the circuit court concluded:
 

 Additionally, a nolle pros entered on a charge is not “crystalline[.]”
 
 Allen [v. Bethlehem Steel Corp.,
 
 76 Md.App. 642, 651, 547 A.2d 1105 (1988)]. The court must look at the intent of the State’s decision to determine whether probable cause existed.
 
 Id.
 
 In the present case, probable cause did exist to charge [appellant] with negligent driving. [Appellant] was found guilty of failure to stay in a designated lane, which would qualify as negligent driving. Therefore, because the prosecution did not terminate in [appellant’s] favor, [s]ummary [j]udgment must be granted for the [defendants on Count V, malicious prosecution.
 

 Preliminarily, a
 
 nol pros
 
 is not a verdict in favor of appellant. The trial court incorrectly applied the principles cited in
 
 Allen
 
 because that case does not address whether a
 
 nol pros
 
 is a termination of proceedings in favor of the plaintiff but, instead, concerns whether a
 
 nol pros
 
 may act as evidence that a defendant lacked probable cause to institute the prosecution. We explain.
 

 
 *555
 
 Some forms of termination of proceedings in favor of the accused may be considered as evidence of want of probable cause.
 
 Exxon Corp. v. Kelly,
 
 281 Md. 689, 694, 381 A.2d 1146 (1978). For example, the discharge of an accused at the preliminary hearing of a criminal charge is evidence of lack of probable cause because “ ‘it is the function of (a magistrate) to pass upon the sufficiency of the case against the accused to justify prosecution.’ ”
 
 Id.
 
 (quoting
 
 Banks v. Montgomery Ward & Co.,
 
 212 Md. 31, 40, 128 A.2d 600 (1957)). The effect of the entry of a
 
 nol 'pros,
 
 however, is not crystalline and “the court must look at the circumstances surrounding the State’s decision so as to determine whether there was an absence of probable cause.”
 
 Allen,
 
 76 Md.App. at 651, 547 A.2d 1105 (citing
 
 Exxon,
 
 281 Md. at 695, 381 A.2d 1146).
 

 Applying
 
 Exxon
 
 and
 
 Allen
 
 to the case
 
 sub judice,
 
 we hold that the facts and circumstances surrounding the prosecutor’s decision not to prosecute appellant for negligent driving do not support the entry of the
 
 nol pros
 
 as evidence of insufficient probable cause. The
 
 nol pros
 
 was entered as part of an agreement wherein appellant agreed to read a not guilty statement of facts on the charge of failure to stay in designated lane. In the district court proceedings, the following colloquy occurred:
 

 [PROSECUTOR]: Your Honor, it is my understanding that with regard to [appellant], she is going to pay out the [failure to stay in designated lane] charge. I believe she will do that right now.
 

 THE COURT: Okay.
 

 [PROSECUTOR]: We will stet the fleeing and alluding [sic] charge and nol pros the negligent driving.
 

 THE COURT: Okay.
 

 [PROSECUTOR]: We would just need verification that she pays out the amount claimed.
 

 [APPELLANT’S
 

 COUNSEL]: [Prosecutor], your offer was to
 

 [PROSECUTOR]: It is what I just said.
 

 
 *556
 
 [APPELLANT’S
 

 COUNSEL]:—(continuing) do a not guilty on the—
 

 [PROSECUTOR]: My understanding was that your client was going to pay it out, so then we weren’t even going to have a not guilty statement of facts.
 

 [APPELLANT’S
 

 COUNSEL]: I was going to try to appeal to the [c]ourt based on her long driving record to consider a PBJ after the [c]ourt made its determination.
 

 [PROSECUTOR]: That’s fine.
 

 THE COURT: Okay. So you are going to stet the negligent driving?
 

 [PROSECUTOR]: We are going to stet the fleeing and alluding, [sic] 21-904B, nol pros the negligent driving, and do a not guilty statement of facts on the [failure to stay in designated lane charge].
 

 There is no evidence to suggest that the prosecutor entered a
 
 nol pros
 
 on the negligent driving charge for any reason other than to reach an agreement with appellant. Consequently, the entry of the
 
 nol pros
 
 does not act as evidence that probable cause was lacking.
 

 Our inquiry, however, does not end with the discussion of
 
 Allen.
 
 Although the entry of the
 
 nol pros
 
 in the instant case does not act as evidence of insufficient probable cause, appellant does provide other evidence which would render summary judgment inappropriate. As explained above, appellants set forth facts that suggested Deputy French did not have probable cause to charge appellant with negligent driving. If a fact finder believed appellant’s version that she was not erratic and that she stayed in her lane of travel at all times, then Deputy French lacked probable cause to charge her and appellant could satisfy the third element of malicious prosecution.
 

 Furthermore, the fourth element of malicious prosecution requires a determination of whether the defendants acted with malice. “[S]ummary judgment is generally
 
 *557
 
 inappropriate when matters such as knowledge, intent, and rfiotive are at issue.”
 
 Okwa,
 
 360 Md. at 178, 757 A.2d 118. The credibility of witnesses and their intent or motive are issues to be decided by a fact finder. A jury could reasonably infer from appellant’s version of the events that Deputy French issued the negligent driving citation as a means of insulating himself from liability after not finding damage on appellant’s vehicle and to supply probable cause after it had evaporated by reason of discovering appellant was not involved in the reported hit-and-run. Therefore, we hold that summary judgment was not appropriate in disposing of appellants’ malicious prosecution claim
 
 [5]
 
 as it related to the negligent driving charge.
 

 Intentional Inñiction of Emotional Distress
 

 Under their claim for intentional infliction of emotional distress, appellants listed Deputy French, Sheriff Meadows, Sergeant Vernon, Jane Doe, Chief Sheridan, and Baltimore County as defendants. With regard to Deputy French, Sheriff Meadows, and Sergeant Vernon, the circuit court granted their motion for summary judgment after finding that appellants’ alleged facts did not constitute extreme and outrageous conduct. Jane Doe was dismissed from the case pursuant to Baltimore County’s motion to dismiss.
 
 [6]
 
 Likewise, Chief Sheri
 
 *558
 
 dan and Baltimore County were also dismissed from the case pursuant to their respective motions to dismiss.
 

 Addressing the tort of intentional infliction of emotional distress, the Court of Appeals said in
 
 Kentucky Fried Chicken Nat’l Mgmt. Co. v. Weathersby,
 
 326 Md. 663, 670-71, 607 A.2d 8 (1992):
 

 The extraordinary feature of the tort ... is its insistence upon “extreme and outrageous conduct.” In fact, this element is, in large respect, the entire tort. It both limits the reach of the tort and dominates the proof of its elements. The outrageous requirement means there is no liability simply for the intentional infliction of emotional distress. If a defendant intends to cause a plaintiff emotional distress and succeeds in doing so, the defendant is nonetheless
 
 not
 
 liable unless his or her conduct is also extreme and outrageous.
 

 (Citation omitted.)
 

 What constitutes extreme and outrageous conduct was explained by the Court as follows:
 

 We reemphasized that the tort is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct.... Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.
 

 Id.
 
 at 670, 607 A.2d 8 (citing
 
 Batson v. Shiflett,
 
 325 Md. 684, 734-35, 602 A.2d 1191 (1992)).
 

 Considering the conduct alleged to be intentional, extreme, and outrageous: 1) Deputy French pulled appellant over because he believed she was a suspect in a hit-and-run accident, 2) that he observed scars on her face from a recent
 
 *559
 
 surgery but disregarded the injuries during the arrest, 3) that he laughed at the pain he inflicted, and 4) that he handcuffed her too tightly and would not loosen the handcuffs when requested by appellant. Although such behavior, if true, was inappropriate, it is not tantamount to “atrocious[ ] and utterly intolerable” behavior that goes “beyond all possible bounds of decency.” Likewise, assuming Sergeant Vernon refused to take appellants’ internal complaint when they attempted to file it at the sheriffs department, the refusal, although possibly improper, did not rise to the level necessary to trigger liability under the tort of intentional infliction of emotional distress.
 

 Turning to allegations against Jane Doe, Chief Sheridan, and Baltimore County, appellants suggested that Jane Doe’s conduct “was intentional, extreme, and outrageous in failing to investigate the veracity of any of the information provided before transmitting it to Harford County with a false report that the Dodge truck driven by [appellant] ... had been involved in a hit-and-run automobile accident.” Chief Sheridan—who the complaint contends was responsible for the “hiring, training, and supervision” of the 911 center personnel—and Baltimore County are apparently included under the theory of respondeat superior.
 

 In our opinion, appellants have asserted a negligence claim. “Negligence is the failure to use reasonable care under the circumstances.”
 
 Williams,
 
 112 Md.App. at 551, 685 A.2d 884. Although appellants make use of the phrase “intentional, extreme, and outrageous,” their claim centers on Jane Doe’s “fail[ure] to investigate the veracity” of the information provided to Deputy French and, thus, the appropriate common law claim is negligence. Simply including the signature language of an intentional tort does not cause a negligence claim to transform into an intentional tort. Moreover, there are no other averments contained in the complaint which explain how Jane Doe’s conduct constituted an intentional act. Consequently, we shall review the granting of the motions to dismiss of Chief Sheridan and Baltimore County,
 
 infra,
 
 on the premise that appellants’ cause of action against Jane Doe was for negligence.
 

 
 *560
 

 Negligence
 

 The defendants identified under count seven of appellants’ complaint included Deputy French, Sheriff Meadows, Sergeant Vernon, Harford County, Jane Doe, Chief Sheridan, BCPD, Baltimore County, and Maryland.
 
 [7]
 
 Summary judgment was granted for Deputy French, Sheriff Meadows, and Sergeant Meadows because, according to the circuit court, Deputy French and Sergeant Vernon were protected by the umbrella of public official immunity. Also as explained,
 
 supra,
 
 the court granted the motions to dismiss of Chief Sheridan and Baltimore County, thereby dismissing Jane Doe, Chief Sheridan, and Baltimore County. Finally, the BCPD and Maryland were dismissed pursuant to their motions to dismiss.
 

 Under common law immunity, public officials are entitled to qualified immunity from negligence claims.
 
 Ashton,
 
 339 Md. at 117-18, 660 A.2d 447;
 
 Parker v. State,
 
 337 Md. 271, 285, 653 A.2d 436 (1995);
 
 Williams,
 
 112 Md.App. at 549-50, 685 A.2d 884. In
 
 Ashton,
 
 the requirements for common law qualified immunity were set forth by the Court of Appeals as follows:
 

 “Before a government representative in this State is relieved of liability for his [or her] negligent acts, it must be determined that the following independent factors simultaneously exist: (1) the individual actor, whose alleged conduct is at issue, is a public official rather than a mere government employee or agent; and (2) his tortious conduct occurred while he [or she] was performing discretionary, as opposed to ministerial, acts in furtherance of his [or her] official duties.... Once it is established that the individual is a public officer and the tort was committed while per
 
 *561
 
 forming a duty which involves the exercise of discretion, a qualified immunity attaches; namely, in the absence of malice, the individual involved is free from liability.”
 

 Ashton,
 
 339 Md. at 116-17, 660 A.2d 447 (quoting
 
 James v. Prince George’s County,
 
 288 Md. 315, 323-24, 418 A.2d 1173 (1980) (emphasis omitted)).
 

 In addition to common law immunity, the General Assembly has enacted the Maryland Tort Claims Act (MTCA), which broadened the qualified immunity coverage previously available only to public officials to include all State personnel. Md.Code (2002 RepLVoL), State Gov. (S.G.) § 12-101
 
 [8]
 
 ;
 
 Lee,
 
 149 Md.App. at 70, 814 A.2d 86. Moreover, although the MTCA continued to grant qualified immunity to State personnel against negligence claims, it expanded coverage to all types of tort claims, including constitutional and intentional torts. C.J. § 5—522(b);
 
 Lee,
 
 149 Md.App. at 83-84, 814 A.2d 86;
 
 Ford v. Baltimore City Sheriffs Office,
 
 149 Md.App. 107, 132-35, 814 A.2d 127 (2002). The MTCA provides in pertinent part:
 

 (a)
 
 In
 
 general.—(1) Subject to the exclusions and limitations in this subtitle and notwithstanding any other provision of law, the immunity of the State and of its units is waived as to a tort action, in a court of the State, to the extent provided under paragraph (2) of this subsection. (2) The liability of the State and its units may not exceed $200,000 to a single claimant for injuries arising from a single incident or occurrence.
 

 (b)
 
 Exclusions and
 
 limitations.—Immunity is not waived under this section as described under § 5-522(a) of the Courts and Judicial Proceedings Article.
 

 S.G. § 12-104(a).
 

 Under S.G. § 12-105, the MTCA further states that “State personnel shall have the immunity from liability described
 
 *562
 
 under § 5-522(b) of the Courts and Judicial Proceedings Article.” Section 5-522 of the Courts and Judicial Proceedings Article provides, in part:
 

 (a)
 
 Tort liability—Exclusions from waiver under § 12-101 of the State Government
 
 Article.—Immunity of the State is not waived under § 12-104 of the State Government Article for:
 

 (1) Punitive damages;
 

 (2) Interest before judgment;
 

 (3) A claim that arises from the combatant activities of the State Militia during a state of emergency;
 

 (I) Any tortious act or omission of State personnel that:
 

 (i) Is not uñthin the scope of the public duties of the State personnel; or
 

 (ii) Is made with malice or gross negligence;
 

 (5) A claim by an individual arising from a single incident or occurrence that exceeds $200,000; or
 

 (6) A cause of action that law specifically prohibits.
 

 (b)
 
 Same—State
 
 personnel.—State personnel, as defined in § 12-101 of the State Government Article, are immune from suit in courts of the State and from liability in tort for a
 
 tortious act or omission that is within the scope of the public duties of the State personnel and is made without malice or gross negligence,
 
 and for which the State or its units have waived immunity under Title 12, Subtitle 1 of the State Government Article, even if the damages exceed the limits of that waiver.
 

 (Emphasis added.)
 

 Accordingly, whether under common law qualified immunity or the statutory qualified immunity provided by the MTCA, Deputy French, Sergeant Vernon, and Sheriff Meadows may only avoid liability for a claim of negligence if their conduct was within the scope of the duties of State personnel and each acted without malice or gross negligence. For purposes of public official immunity under the common law or the MTCA, malice is defined as “ ‘an act without legal justifi
 
 *563
 
 cation or excuse, but with an evil or rancorous motive influenced by hate,’ the purpose being to deliberately and willfully injure the plaintiff.”
 
 Shoemaker v. Smith,
 
 358 Md. 143, 163, 725 A.2d 549 (1999) (quoting
 
 Leese v. Baltimore County,
 
 64 Md.App. 442, 480, 497 A.2d 159 (1985)).
 

 Additionally, “ ‘[ajctual malice does not always have to be shown with specificity; it can be inferred.’ ”
 
 Thacker v. Hyattsville,
 
 135 Md.App. 268, 307, 762 A.2d 172 (2000) (quoting
 
 Leese,
 
 64 Md.App. at 480, 497 A.2d 159). We frequently reject, however, attempts to rely on bare allegations that a particular act raises an inference of malice.
 
 Lee,
 
 149 Md.App. at 85, 814 A.2d 86. A plaintiff may not rely on the “mere existence of such an intent, motive, or state of mind issue to defeat summary judgment.”
 
 Thacker,
 
 135 Md.App. at 301, 762 A.2d 172. “Because a defendant’s subjective intent is an element of the plaintiffs claim, the plaintiff must point to specific evidence that raises an inference that the defendant’s actions were improperly motivated in order to defeat the motion.”
 
 Id.; see also Lee,
 
 149 Md.App. at 85, 814 A.2d 86.
 

 The facts in
 
 Williams, supra,
 
 are instructive on the issue of malice in contrast to the facts in the case at hand. There, appellant, driving his mother’s car, which had been stolen and consequently placed on the teletype, was stopped by police for suspected auto theft because authorities failed to remove the vehicle from the stolen vehicle list when it was recovered. Concluding that none of allegations by appellant directly or inferentially constituted malice, we observed:
 

 Thus, we may look to the facts and circumstances set forth in the deposition testimony as well as other matters outside of the pleadings. Therein is to be found no expressions of hostility of the officers nor any physical harm inflicted, and indeed, the record reflects conciliation, accommodation and even an apologetic attitude on the part of the arresting officer. Based on the facts and circumstances before the lower court, there was not a scintilla of evidence
 
 *564
 
 that the arresting officers harbored ill will or an evil motive toward appellant.
 

 Williams,
 
 112 Md.App. at 550-51, 685 A.2d 884.
 

 Once the officer, in
 
 Williams,
 
 discovered the vehicle was erroneously listed as stolen, he offered appellant a business card and told him to contact him if he had any further difficulties. By contrast, appellants have sufficiently alleged facts that create an inference of malice concerning Deputy French’s actions. Based on appellant’s version of her traffic stop and arrest, Deputy French, without provocation, grabbed her and intentionally injured her face despite having noticed that she had recent TMJ surgery. Appellant reported that Deputy French laughed and told her it must have hurt as he forced her face into the side of her vehicle. The allegations essentially suggest that Deputy French deliberately and willfully targeted appellant’s preexisting injury and that he laughed or made other verbal statements indicating an intent to harm her. Assuming a jury found these allegations to be true, Deputy French’s conduct would constitute malice and, thus, qualified immunity would not be available to him as a defense.
 
 [9]
 

 In ruling that Deputy French’s alleged conduct did not constitute malicious behavior, the trial court apparently disregarded appellant’s version of events and found Deputy French’s story to be more credible. Summary judgment is not a substitute for trial because it does not provide the proper opportunity for the trial court to give credence to certain facts and refuse to credit others.
 
 Okwa,
 
 360 Md. at 182-83, 757 A.2d 118. Consequently, because appellant’s account could allow a jury to reasonably infer that Deputy French was motivated by an intent to harm her and because
 
 *565
 
 such a finding could preclude him from invoking the defense of qualified immunity, we hold that summary judgment was not the correct disposition of appellants’ negligence claim against Deputy French.
 

 Unlike the claims made against Deputy French, appellants’ allegations regarding Sergeant Vernon and Sheriff Meadows do not give rise to an inference of malice. The gravamen of appellants’ contention against Sergeant Vernon is that he failed or refused to accept the internal complaint they attempted to file against Deputy French. In Count VI of her complaint, appellant alleges that Sergeant Vernon’s conduct constituted intentional infliction of emotional distress. In our discussion,
 
 supra,
 
 we have concluded that none of the defendants acted in a manner that would constitute the requisite extreme and outrageous conduct to support a claim of intentional infliction of emotional distress.
 

 Under Count VII of her complaint, alleging negligence, appellant avers:
 

 51. That Defendant Sergeant Gary Vernon of the Harford County Sheriffs Department, while assigned to the Internal Affairs Department, owed a legal duty to take the Plaintiffs Mary Ann Hines and Leon Hines’ complaint against Defendant Deputy Sheriff John French and investigate same in accordance with the law and policies of the Harford County Sheriffs Department, which he refused to do on September 2, 1998 when Plaintiffs Mary Ann Hines and Leon Hines attempted to file a complaint against Defendant Deputy Sheriff John French with Defendant Sergeant Gary Vernon.
 

 52. That the Plaintiffs Mary Ann Hines and Leon Hines sustained injuries and damages as aforesaid proximately caused by Defendant Sergeant Gary Vernon’s failure to intake their complaint, and to investigate same, and to keep them apprised of same, violating the Constitutional rights of the Plaintiffs to due process under the law and to redress for personal injuries sustained, as well as their common law rights guaranteed by the Maryland Declaration of Rights.
 

 
 *566
 
 Sergeant Vernon, in his capacity as the officer responsible for receiving appellant’s complaint, was performing a ministerial task, rather than a discretionary one. As a result, he was not entitled to qualified immunity. As the Court of Appeals observed in
 
 James v. Prince George’s County,
 
 288 Md. 315, 326-27, 418 A.2d 1173 (1980):
 

 While this dividing line between immunity and liability is one of longstanding in Maryland, we have only rarely explained the difference between discretionary and ministerial acts. In
 
 State, Use, Clark v. Ferling,
 
 220 Md. 109, 151 A.2d 137 (1959), Judge Prescott, however, did note for this Court that “ministerial refers to duties in respect to which nothing is left to discretion as distinguished from those where the official has the freedom and authority to make decisions and choices.” Id. at 113, 151 A.2d at 139. And in
 
 Schneider v. Hawkins, 179 Md.
 
 21, 25, 16 A.2d 861, 864 (1940), we explained:
 

 The term “discretion” denotes freedom to act according to one’s judgment in the absence of a hard and fast rule. When applied to public officials, “discretion” is the power conferred upon them by law to act officially under certain circumstances according to the dictates of their own judgment and conscience and uncontrolled by the judgment or conscience of others.
 

 The ministerial-discretionary distinction was aptly summarized by the California Supreme Court over eighty years ago:
 

 Where (a public officer’s) duty is absolute, certain, and imperative, involving merely the execution of a set task-in other words, is simply ministerial—he is liable in damages to any one specially injured either by his omitting to perform the task, or by performing it negligently or unskillfully. On the other hand, where his powers are discretionary, to be exerted or withheld according to his own judgment as to what is necessary and proper, he is not liable to any private person for a neglect to exercise those powers, nor for the consequences of a lawful exercise of them, where no corruption or malice can be
 
 *567
 
 imputed, and he keeps within the scope of his authority.
 
 [Doeg v. Cook,
 
 126 Cal. 213, 58 P. 707, 708 (1899).]
 

 See also
 
 Restatement (Second) of Torts
 
 § 895D, comment f (1979) (factors in determining whether function is discretionary include among others, nature of function, importance to public, planning v. operational, essentially political decision);
 
 C. Rhyne, et al, supra,
 
 at 16 (discretionary function quasi-judicial in nature in that it requires personal deliberation and judgment).
 

 Sergeant Vernon’s duties in taking complaints prior to forwarding them for investigation were clerical in nature and involved no exercise of judgment or requirement to make decisions or choices. Absent a legally cognizable duty, however, Sergeant Vernon’s refusal to accept appellant’s complaint fails to form the basis of a cause of action. The Court of Appeals in
 
 Ashburn v. Anne Arundel County,
 
 306 Md. 617, 630-31, 510 A.2d 1078 (1986), explained the remedy for the failure of an officer to properly discharge his or her duty:
 

 Presently, the police officer is subject to disciplinary proceedings or criminal prosecution for any dereliction of duty,
 
 see
 
 Md.Code (1957, 1982 Repl.Vol.), Art. 27, §§ 727 to 734D, and these proceedings are better suited to review charges against the police officer for the breach of a duty which his job, rather than his responsibility as a member of the public, imposes upon him. Moreover, as stated by the District of Columbia Court of Appeals in
 
 Morgan[v. District of Columbia,
 
 468 A.2d 1306]
 
 supra,
 

 while public prosecution does little to console those who suffer from the mistakes of police officials, on balance, the community is better served by a policy that both protects the exercise of law enforcement discretion and affords a means of review by those who, in supervisory roles, are best able to evaluate the conduct of their charges.
 

 468 A.2d at 1312.
 

 A proper plaintiff, however, is not without recourse. If he alleges sufficient facts to show that the defendant policeman created a “special relationship” with him upon which he
 
 *568
 
 relied, he may maintain his action in negligence.
 
 See Restatement (Second) of Torts
 
 § 315(b). This “special duty rule,” as it has been termed by the courts, is nothing more than a modified application of the principle that although generally there is no duty in negligence terms to act for the benefit of any particular person, when one does indeed act for the benefit of another, he must act in a reasonable manner.
 
 See Scott v. Watson, supra,
 
 278 Md. [160] at 170-71, 359 A.2d [548] at 555;
 
 Penna R.R. Co. v. Yingling,
 
 148 Md. 169, 129 A. 36 (1925). In order for a special relationship between police officer and victim to be found, it must be shown that the local government or the police officer affirmatively acted to protect the specific victim or a specific group of individuals like the victim, thereby inducing the victim’s specific reliance upon the police protection.
 

 (Footnote omitted.)
 

 From the foregoing, Sergeant Vernon’s alleged conduct, admittedly contrary to his responsibilities as a police officer, was a breach of his duty to the public at large, rather than a specific individual. There being no special relationship between appellant and Sergeant Vernon, the proper avenue for redress of his refusal to accept the complaint of police abuse is by way of a disciplinary proceeding or prosecution.
 

 Throughout the complaint, appellants named Sheriff Meadows as a defendant under the theory of vicarious liability, alleging that he was responsible for the supervision and control of Deputy French and Sergeant Vernon. Under the qualified immunity provided by C.P. § 5-522, however, Sheriff Meadows is independently entitled to immunity for discretionary acts performed without malice and, thus, principles of vicarious liability are not applicable.
 
 See Thacker,
 
 135 Md. App. at 310, 762 A.2d 172 (explaining that under C.P. § 5-507—a similar immunity provision dealing with municipal officers—each officer has the ability to implement independent immunity and, consequently, “plaintiffs cannot rely upon vicarious liability principles, but must proffer evidence to show that each one of the defendants acted with malice.”). There is no
 
 *569
 
 evidence in the case
 
 sub judice
 
 to suggest that Sheriff Meadows acted with malice. He was not directly involved in appellant’s arrest or subsequent prosecution—the only discretionary acts for which appellants have proffered evidence sufficient to defeat summary judgment. Thus, he could properly raise immunity as a defense to all counts, but specifically for the malicious prosecution and negligence counts that have survived summary judgment with regard to Deputy French.
 
 [10]
 
 As a result, we hold that the case against Sheriff Meadows was properly dismissed pursuant to his joint motion for summary judgment.
 

 We next address the negligence claims against Jane Doe, Chief Sheridan, and Baltimore County. The trial court dismissed each on grounds that they were immune as to the negligence count. Jane Doe-a 911 dispatcher stationed in Towson—and Chief Sheridan are both employed by Baltimore County and, thus, the Local Government Tort Claims Act (LGTCA) contains the governing provisions concerning immunity.
 
 [11]
 
 The LGTCA provides, in pertinent part:
 

 (a)
 
 Government to provide legal defense to
 
 employees.— Each local government shall provide for its employees a legal defense in any action that alleges damages resulting from tortious acts or omissions committed by an employee within the scope of employment with the local government.
 

 
 *570
 
 (b)
 
 Immunity;
 
 exceptions.—(1) Except as provided in paragraph (2) of this subsection, a person may not execute against an employee on a judgment rendered for tortious acts or omissions committed by the employee within the scope of employment with a local government.
 

 (2)(i) An employee shall be fully liable for all damages awarded in an action in which it is found that the employee acted with actual malice.
 

 (ii) In such circumstances the judgment may be executed against the employee and the local government may seek indemnification for any sums it is required to pay under § 5—303(b)(1) of this subtitle.
 

 C.J. § 5-302(a) and (b).
 

 Additionally, under C.J. § 5-303, the LGTCA states:
 

 (a)
 
 Limitation on
 
 liability.—(1) Subject to paragraph (2) of this subsection, the liability of a local government may not exceed $200,000 per an individual claim, and $500,000 per total claims that arise from the same occurrence for damages resulting from tortious acts or omissions, or liability arising under subsection (b) of this section and indemnification under subsection (c) of this section.
 

 (2) The limits on liability provided under paragraph (1) of this subsection do not include interest accrued on a judgment.
 

 (b)
 
 When government
 
 liable.—(1) Except as provided in subsection (c) of this section, a local government shall be liable for any judgment against its employee for damages resulting from tortious acts or omissions committed by the employee within the scope of employment with the local government.
 

 (2) A local government may not assert governmental or sovereign immunity to avoid the duty to defend or indemnify an employee established in this subsection.
 

 (d)
 
 Defenses not
 
 waived.—Notwithstanding the provisions of subsection (b) of this section, this subtitle does not waive any common law or statutory defense or immunity in exis
 
 *571
 
 tence as of June 80, 1987, and possessed by an employee of a local government.
 

 (e)
 
 Defenses available to
 
 government.—A local government may assert on its own behalf any common law or statutory defense or immunity in existence as of June 30, 1987, and possessed by its employee for whose tortious act or omission the claim against the local government is premised and a local government may only be held liable to the extent that a judgment could have been rendered against such an employee under this subtitle.
 

 The purpose of the aforementioned provisions is not to provide immunity to local government employees. Instead, the sections are designed to set forth the circumstances in which the local government is responsible for providing a legal defense and indemnification for its employees’ tortious acts. As C.J. § 5-303(d) makes clear, however, the LGTCA does not waive any immunity defenses that are otherwise available to its employees. Moreover, C.J. § 5-303(e) permits the local government to utilize any immunity defense possessed by its employees.
 

 With regard to Jane Doe, the complaint alleged that she breached a duty owed to appellants because she failed to verify the accuracy of the information describing appellant’s truck as a suspected hit-and-run vehicle. Because Jane Doe is a civil employee, she is not entitled to qualified public official immunity. Quite apart from the question of qualified immunity, appellant was required to establish that Jane Doe’s failure to verify the accuracy of the information implicating appellant’s truck in the hit-and-run accident constituted a breach of a duty owed appellant. In order to survive a motion to dismiss by Doe, appellant was required to allege a special relationship. The Court of Appeals reiterated the parameters of liability of 911 operators in
 
 Muthukumarana v. Montgomery County,
 
 370 Md. 447, 495, 805 A.2d 372 (2002):
 

 Although we acknowledge that a more formulaic special relationship test may facilitate greater predictability, our
 
 *572
 
 review of the many different special relationship requirements adopted by other jurisdictions reinforces our choice not to incorporate a more regimented approach into Maryland’s special relationship test. We continue to believe that “the intent of the ‘special relationship’ doctrine is better addressed by our general standard outlined in
 
 Ashburn”
 
 because it preserves our ability to determine “whether a special relationship exists” on a “case-by-case basis.”
 
 Williams,
 
 359 Md. at 150, 753 A.2d at 67-68. Therefore, after incorporating 911 personnel into the purview of the public duty doctrine, we also find that the special relationship test in
 
 Ashbum
 
 is the appropriate analytical paradigm to be used in evaluating work-related negligence claims against 911 personnel. Under that test, in order for a special relationship between a 911 employee and a person in need of assistance to exist, it must be shown that the 911 employee affirmatively acted to protect or assist the specific individual, or a specific group of individuals like the individual, in need of assistance, thereby often inducing the specific reliance of the individual on the employee.
 
 See Ashburn,
 
 306 Md. at 631, 510 A.2d at 1085. Absent the existence of those factors, a special relationship may not be found to exist between the employee and the individual, and a 911 employee may not be held liable in tort to an individual.
 

 See also Williams v. Mayor & City Council of Baltimore,
 
 359 Md. 101, 753 A.2d 41 (2000). Because there is no allegation that appellant maintained a special relationship with Jane Doe, the suits against Jane Doe and Baltimore County must be dismissed.
 

 Chief Sheridan, on the other hand, is a public officer and he is entitled to common law qualified immunity. As discussed,
 
 supra,
 
 Chief Sheridan may raise qualified immunity as a defense if, in the absence of malice, “ ‘the tort was committed while performing a duty which involve[d] the exercise of discretion.’ ”
 
 Ashton,
 
 339 Md. at 116-17, 660 A.2d 447 (quoting
 
 James v. Prince George’s County,
 
 288 Md. 315, 323-24, 418 A.2d 1173 (1980)). Chief Sheridan was neither directly nor indirectly involved in the incidents giving rise to this case
 
 *573
 
 and appellants have not alleged additional facts which create an inference of malice and, therefore, Chief Sheridan was entitled to raise immunity as a defense. Consequently, Baltimore County may also avoid any vicarious liability attributable to Chief Sheridan’s actions because, under C.J. § 5-303(e), it can properly raise any defense he possesses. Thus, the trial court properly dismissed the complaints against Jane Doe and Chief Sheridan. Similarly, in its capacity as an employer, Baltimore County was properly dismissed for the claims against Chief Sheridan and Jane Doe.
 

 Finally, we address the trial court’s dismissal of the BCPD and the State of Maryland. In its opinion, the court determined that the BCPD should be dismissed because “[p]o-lice [departments are not legally cognizable entities subject to suit in [their] own name.” We agree. County police departments are agents of the State and should not be viewed as separate legal entities.
 
 See DiPino,
 
 354 Md. at 32, 729 A.2d 354;
 
 Boyer v. State,
 
 323 Md. 558, 572 n. 9, 594 A.2d 121 (1991);
 
 Revene v. Charles County Comm’rs,
 
 882 F.2d 870, 874 (4th Cir.1989) (explaining that the sheriffs department—which is a State agency—is not a separate entity from the State). Consequently, any claims made against the BCPD are essentially claims against Baltimore County and therefore naming the BCPD as a separate defendant was improper and unnecessary.
 

 In addressing the State of Maryland’s motion to dismiss, the circuit court held that Maryland was entitled to immunity under the MTCA because all the claims against Deputy French involved malice. As we observed,
 
 supra,
 
 under C.J. § 5-522(a)(4), Maryland has not waived immunity for a tortious act committed by State personnel that “[i]s not within the scope of the public duties of the State personnel” or “[i]s made with malice or gross negligence.” In the case
 
 sub judice,
 
 Deputy French and Sheriff Meadows qualified as State personnel. As explained earlier, however, we have already concluded that Sergeant Vernon and Sheriff Meadows were properly dismissed. The only claims for which Maryland
 
 *574
 
 potentially remains liable are the malicious prosecution and negligence counts against Deputy French. The counts against French, however, are premised solely on malice. As a result, we hold that Maryland was properly dismissed because there are no remaining claims which allege that any State personnel committed a tortious act without malice.
 

 Excessive Force
 

 Although it is not denoted in a separate count,
 
 [12]
 
 appellants did use language in the complaint to suggest that Deputy French used excessive force. For example, under their negligence count, appellants assert that Deputy French used “grossly excessive force to discharge his duties in accordance with the
 
 Constitution of the United States
 
 and the State of Maryland.” Because appellants implicitly raised the issue of excessive force and because the trial court briefly focused on the issue, we will review whether summary judgment was an appropriate disposition of appellants’ excessive force claim.
 
 [13]
 

 The standards for analyzing claims of excessive force are the same under Articles 24 and 26 of the Maryland Constitution as that under the Fourth Amendment of the
 
 *575
 
 United States Constitution.
 
 Williams,
 
 112 Md.App. at 547, 685 A.2d 884. “The test for whether police officers have used excessive force is ‘whether the officers’ actions are objectively reasonable in light of the facts and circumstances confronting them.”
 
 Branch v. McGeeney,
 
 123 Md.App. 330, 348, 718 A.2d 631 (1998) (quoting
 
 Graham v. Connor,
 
 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)). As we explained in
 
 Williams,
 
 112 Md.App. at 547, 685 A.2d 884 (quoting
 
 Graham,
 
 490 U.S. at 396-97, 109 S.Ct. 1865), the reasonableness standard requires one to pay
 

 careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he [or she] is actively resisting arrest or attempting to evade arrest by flight.... The ‘reasonableness’ of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.... The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.
 

 We discussed more fully in
 
 Williams,
 
 112 Md.App. at 543-44, 685 A.2d 884, under what circumstances qualified immunity is available:
 

 Moreover, qualified immunity protects “all but the plainly incompetent or those who knowingly violate the law.”
 
 Malley v. Briggs,
 
 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). When police officers perform discretionary functions, the rationale in insulating officers against all but flagrant abuses of their position, is the necessity to permit police officers, especially in the context of police work, to make the appropriate decisions in an atmosphere of great uncertainty. The theory is that holding police officers liable in hindsight for every injurious consequence of their actions would paralyze the functions of law enforcement.
 
 Finder v. Johnson,
 
 54 F.3d 1169, 1173 (4th Cir.1995).
 
 *576
 
 Moreover, permitting unwarranted lawsuits against officers would entail substantial social costs including inhibition and fear of potential liability among peace officers and would further consume much of the officer’s time preventing him or her from performing his or her duties.
 
 See Anderson,
 
 483 U.S. at 638, 107 S.Ct. at 3038 and
 
 Turner v. Dammon,
 
 848 F.2d 440, 443-44 (4th Cir.1988). Because of these considerations, immunity is granted to officers who act reasonably, albeit mistakenly, in light of clearly established law and the information they possessed without the benefit of hindsight.
 
 Anderson [v. Creighton],
 
 483 U.S. [635] at 641, 107 S.Ct. [3034] at 3039-40, 97 L.Ed.2d 523 (1987).
 

 Regarding our review of the court’s ruling on a motion for summary judgment raising qualified immunity, we said in
 
 Williams,
 
 112 Md.App. at 543-44, 685 A.2d 884:
 

 Appellant and appellee cite
 
 Taft v. Vines,
 
 83 F.3d 681 (4th Cir.1996) in which the U.S. Court of Appeals for the Fourth Circuit, sitting
 
 en banc,
 
 affirmed the grant of summary judgment where the police officers had probable cause to believe that the occupant of the subject vehicle was a suspect wanted for murder and approached the vehicle with drawn weapons. Appellant attempts to distinguish
 
 Taft
 
 on the basis of the distinction of the severity between one suspected of being a car thief as opposed to one suspected of murder. The only issue is whether the arresting officers have probable cause to make a lawful arrest. In
 
 Taft,
 
 the Court adopted the earlier opinion of Judge Motz, who had dissented from the panel decision, and held:
 

 The issue presented by the excessive force claim is not whether the officers violated police procedures, or even whether they, in fact, violated the Fourth Amendment. Rather, the question is whether, confronted with the facts of this case, reasonable police officers should have known that clearly established constitutional law prohibited the methods used in the search. We cannot so hold. Accordingly,
 
 the officers were entitled to summary judgment on the basis of qualified immunity on the excessive force claims.
 

 
 *577
 

 Id.
 
 at [88 F.3rd] 684.
 

 The dissenting opinion by Judge Motz had opined:
 

 Being the subject of an armed felony stop at night by numerous law enforcement officers most certainly would be a terrifying experience for guilty and innocent alike, regardless of their sex or age. However, in exigent circumstances, the law permits its enforcement officers to conduct such procedures in order to protect the community from a dangerous and violent offender. As frightening as these events must have been for the plaintiffs, these acts present a text book case for the imposition of qualified immunity. Not every mistake and act by “state actors” is premised on constitutional motives.
 
 See Taft v. Vines,
 
 70 F.3d 304, 317-321 (1995).
 

 Illustrative of the proper analysis regarding a determination of whether the force employed is excessive is our discussion in
 
 Tavakoli-Nouri v. State,
 
 139 Md.App. 716, 731-32, 779 A.2d 992 (2001):
 

 Applying these standards to the circumstances of the instant case, we find that a reasonable fact finder could conclude that there was no “reasonable basis” for using this level of force to arrest and search appellant. Significantly, appellant alleges that he did not resist the arrest. Trooper Sinai approached appellant from behind, while he was transacting his business with an MVA supervisor, and handcuffed him behind his back. These actions he had a right to do based on the information from the taxi driver. Putting on the handcuffs protected the police by depriving appellant of the ability to gain access to any sharp object or weapon that he may have had....
 

 With his hands constrained by handcuffs, however, appellant had no access to the sharp object he was suspected of carrying, and thus, that suspected sharp object was not such a threat to the police that they could not have asked him to walk to the office for the search. The information held by the police did not reflect that appellant was a particularly violent person-he was suspected of committing a crime
 
 *578
 
 involving property damage (to the taxicab), not violence to a person. He was not acting in a threatening way before he was approached.
 
 Moreover, there were five police officers available to stop and subdue him, should he suddenly show violent tendencies.
 
 Under these circumstances, we conclude that dragging appellant from the place of arrest to the office could be viewed by a reasonable trier of fact as a use of excessive force in violation of Article 24.
 
 See Okwa,
 
 360 Md. at 204, 757 A.2d 118 (plaintiff was dragged out of airline terminal, forced to the ground, struck in the head, and had his hands twisted by his thumbs).
 

 (Emphasis added; footnote omitted.)
 

 In the case
 
 sub judice,
 
 appellants have provided sufficient support for the assertion that Deputy French used unreasonable force. Had Deputy Sheriff French been confronted with several occupants of the vehicle or had there been an indication that appellant harbored a weapon or had resistance been offered once appellant alighted from the truck, the reasonableness of the force exerted would be cast in a different light. Viewing the alleged facts in a light most favorable to appellants, a jury could conclude that Deputy French used excessive force when he pointed his gun at appellant, “grabbed her and threw her up against the side of her truck,” and “slamm[ed] her head into the side of the truck.” Although Deputy French gives an entirely different account of the events, the resolution of any factual disputes are for trial and not summary judgment.
 
 Okwa,
 
 360 Md. at 178, 757 A.2d 118.
 

 Loss of Consortium
 

 In the complaint’s caption and in the
 
 ad damnum
 
 clause of appellants’ loss of consortium count, they name the Harford County Sheriffs Office and Harford County as defendants. As noted,
 
 supra,
 
 the Harford County Sheriffs Office is not a separate legal entity capable of being sued and, consequently it was properly dismissed as a defendant.
 
 See Boyer,
 
 323 Md. at 572 n. 9, 594 A.2d 121. Harford County was also properly dismissed as a defendant because in Maryland the sheriff and
 
 *579
 
 deputy sheriffs are State employees as opposed to county employees.
 
 Rucker v. Harford County,
 
 816 Md. 275, 281, 558 A.2d 399 (1989). Thus, any vicarious liability claims against Deputy French, Sergeant Vernon, or Sheriff Meadows would have to be filed against Maryland and not Harford County.
 

 As for the loss of consortium claims, they are premised on the viability of the surviving claims and, therefore, only remain to the extent that they relate to 1) the malicious prosecution count against Deputy French for the negligent driving charge, 2) the negligence count against Deputy French, and 3) the excessive force claim against Deputy French.
 

 JUDGMENT OF THE CIRCUIT COURT FOR HAR-FORD COUNTY AFFIRMED, IN PART, AND REVERSED, IN PART.
 

 COSTS TO BE PAID ONE-HALF BY APPELLANTS AND ONE-HALF BY APPELLEE DEPUTY FRENCH.
 

 [1]
 

 . Reference hereinafter to "appellant” in the singular indicates Mary Ann Hines.
 

 [2]
 

 . A short time prior to the incidents in question, appellant had surgery on her right temporormandibular joint (TMJ), or right jaw joint.
 

 [3]
 

 . Appellant conceded the assault claim was barred by the statute of limitations at oral argument before this Court.
 

 [4]
 

 . In
 
 Ashton,
 
 339 Md. at 119 n. 24, 660 A.2d 447, the Court of Appeals noted that the causes of action for assault and battery are analytically dependent upon the cause of action for false imprisonment. If the arrest constituted a false imprisonment, then the physical force used in effectuating the arrest would give rise to a cause of action for assault or battery.
 
 Id.
 
 Conversely, if the arrest was not a false imprisonment, then the physical force used to effectuate the arrest is not tortious.
 
 Id.
 
 Therefore, the legal justification for an arrest indirectly controls whether an assault or battery has occurred.
 

 [5]
 

 . Appellants' malicious prosecution count could potentially be barred by the statutory immunity provided under C.J. § 5-522(b) of the Maryland Tort Claims Act.
 
 See Lee v. Cline,
 
 149 Md.App. 38, 83-84, 814 A.2d 86 (2002) (explaining that C.J. § 5-522(b) provides State officials with a qualified immunity defense for their intentional torts.) For the reasons explained,
 
 infra,
 
 however, we conclude that appellants’ allegations of malice concerning Deputy French trump any immunity defense he could otherwise invoke and, thus, he is not immune to the malicious prosecution count. Conversely, because appellants have not made any claims of malice against Sheriff Meadows, he was properly dismissed from the malicious prosecution count pursuant to his immunity protections.
 

 [6]
 

 . Although Baltimore County’s motion to dismiss did not specifically name Jane Doe, we can infer that the motion sought to dismiss her from the case because Baltimore County is statutorily required to provide her defense under C.J. § 5-302(a), which states:
 

 
 *558
 

 Government to provide legal defense to
 
 employees.—Each local government shall provide for its employees a legal defense in any action that alleges damages resulting from tortious acts or omissions committed by an employee within the scope of employment with the local government.
 

 [7]
 

 . Appellants do not explicitly list Baltimore County or Maryland as defendants in the opening paragraph or the
 
 ad damnum
 
 clause of count seven of their complaint. Both defendants are, however, implicitly included in the paragraphs within count seven, and, therefore, we will address their respective motions to dismiss.
 

 [8]
 

 . We note that sheriffs and deputy sheriffs are State personnel under S.G. § 12-101(a)(6), which explicitly includes “a sheriff or deputy sheriff of a county or Baltimore City.” Therefore, we shall review the claims against Deputy French, Sergeant Vernon, and Sheriff Meadows under the MTCA.
 

 [9]
 

 . The trial court's sole reason for granting summary judgment of the negligence claim against Deputy French was its erroneous finding that qualified immunity applied because there was no evidence of malice. Adhering to the rule that an appellate court may only uphold a grant of summary judgment on the grounds relied on by the trial court,
 
 Ashton,
 
 339 Md. at 80, 660 A.2d 447, we will not address whether appellants have sufficiently alleged the elements of negligence.
 

 [10]
 

 . The trial court also made an alternative ruling concerning Sheriff Meadows. It first interpreted the complaint as alleging a negligent supervision count against Sheriff Meadows but then held that appellants “failed to plead any facts that show how the training of [Deputy] French and [Sergeant] Vernon was deficient.” Because we have already concluded that summary judgment was proper under the doctrine of qualified immunity, we will not reach the trial court’s negligent supervision ruling.
 

 [11]
 

 . An employee under the LGTCA is defined in C.J. § 5—301(c)(1) as “any person who was employed by a local government at the time of the act or omission giving rise to potential liability against that person.” Additionally, C.J. § 5—301 (d) states, in part, that a “Local government” includes “A chartered county established under Article 25A of the Code.”
 

 [12]
 

 . Appellants failed to set forth their claim of excessive force in a separately numbered count. As we observed in
 
 Tavakoli-Nouri v. State,
 
 139 Md.App. 716, 732-33, 779 A.2d 992 (2001), the failure to state a cause of action in separate count renders that portion of the complaint deficient because, as Maryland Rule 2-303(a) states, "[e]ach cause of action shall be set forth in a separately numbered count.” Nevertheless, appellee did not raise and the trial court did not rule upon this procedural defect. Md. Rule 8-131. If, on remand, appellee does move for dismissal of appellants’ excessive force claim pursuant to Md. Rule 2-303(a), we hold that the trial court should allow appellants to amend their complaint, permitting them to allege excessive force in a separately numbered count.
 
 See
 
 Md. Rule 2-341(c) (“Amendments shall be freely allowed when justice so permits.”).
 

 [13]
 

 . Although the MTCA now permits an official to raise qualified immunity as a defense to constitutional tort claims, including the use of excessive force,
 
 see Lee,
 
 149 Md.App. at 83, 814 A.2d 86, we have addressed briefly,
 
 supra, the
 
 issue of whether Deputy French could invoke such immunity, but we shall elaborate on the issue here.